**Dana CLAYBORNE, by her Next Friend and Mother, Anna M. Clayborne, Plaintiff-Appellant,**

v.

**Joseph H. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 829, Docket 78–6189.**

United States Court of Appeals, Second Circuit.

Argued April 25, 1979.

Decided July 19, 1979.

---

Steven R. Shapiro, New York Civil Liberties Union, New York City, for plaintiff-appellant.

Roger C. Field, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty. for the Eastern District of New York, Harvey M. Stone and Ralph McMurry, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for defendant-appellee.

Before FEINBERG, MANSFIELD, Circuit Judges, and HAIGHT,* District Judge.

---

* Honorable Charles Sherman Haight, Jr., United States District Judge, Southern District of New York, sitting by designation.

1. Appellant came to live with the Claybornes on May 4, 1972 and was legally adopted by Mr. and Mrs. Clayborne on August 16, 1973. The adoption was arranged by the New York Foundling Hospital, a state-certified child-care agency in New York City, see N.Y.Soc.Serv.L. § 371(10) (McKinney), and approved by a judge of the Surrogate's Court of Orange County, New York. Prior to the adoption, Mr. and Mrs. Clayborne had custody of appellant as the child's foster parents and received monthly payments under a state program reimbursing foster parents for some of the expenses of boarding and caring for foster children. See N.Y.Soc.Serv.L. § 398–a.

2. Unless otherwise indicated, all citations to the United States Code are to Title 42.

3. In Social Security parlance, the "primary" beneficiary, or "the insured," is the wage-earner directly insured against loss of earning capacity by disability or retirement. A "secondary" beneficiary is an individual eligible to receive benefits by virtue of his or her relationship with and material dependence on a primary beneficiary. The Claybornes' natural child receives secondary benefits on account of her mother. Evidently, these benefits are about equal to the foster care payments the Claybornes had received for caring for appellant prior to the adoption.

4. Section 402 provides in pertinent part:

(d)(1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22, and

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed

(ii) if such individual has died, at the time of such death, or

---

MANSFIELD, Circuit Judge:

Appellant, Dana Clayborne, is the nine-year-old adopted daughter of Anna Clayborne and her husband.[1] Mrs. Clayborne became a disabled former wage earner on or about August 31, 1969 and began receiving Social Security disability insurance benefits pursuant to 42 U.S.C. § 423 in March 1970.[2] Mrs. Clayborne suffers from a serious heart problem which renders her unemployable. Her heart condition also makes it unsafe for her to bear a child. Prior to the onset of her disability, Mrs. Clayborne had one natural child. The Claybornes brought appellant into their family to provide their first child a sibling.

On July 15, 1976 Mrs. Clayborne applied for secondary insurance benefits on Dana's behalf under § 402(d).[3] The application was denied by the Social Security Administration on the ground that appellant was precluded from receiving secondary benefits because she failed to satisfy the requirements of § 402(d)(8) which, with certain exceptions described more fully below, provides that a child adopted after the insured parent becomes entitled to primary benefits does not qualify as a dependent eligible for secondary benefits.[4]

Following internal administrative review, which was abbreviated by consent of the parties, appellant brought suit in the Eastern District of New York against the Secretary of Health, Education and Welfare under § 205(g) of the Social Security Act, U.S.C. § 405(g), to contest the constitutionality of § 402(d)(8), this being the sole basis for challenging the Secretary's decision that appellant was ineligible for secondary benefits. Appellant contended that the statute deprived her of equal protection and due process under the Fifth Amendment of the Constitution. The district court, Jacob Mishler, Chief Judge, upheld the constitutionality of the statute. We affirm.

In 1956 Congress expanded the coverage of the Social Security Act by providing benefits for wage-earners forced by disability into premature retirement, Pub.L. 84–880, § 103(a), 70 Stat. 815 (1956), and in 1958 it broadened the disability insurance plan by providing "secondary" benefits to members of the wage-earner's family who were, or were presumed to be, dependent on the wage-earner. Pub.L. 85-840, § 205(d), 72 Stat. 1022 (1958).[5] We need not detail the numerous modifications of the secondary disability benefits plan that Congress has enacted over the years since 1958. As the statute now stands, and with some qualifications not relevant here, secondary disability benefits are available to all unmarried children under the age of 18 who are "dependent" upon the insured at the time an application for secondary benefits is filed. § 402(d)(1). A child is deemed dependent on her natural parent or adopting parent at the time of filing unless at that time the parent is not living with or contributing to the support of the child and the child is neither the "legitimate" nor adopted child of the parent, or unless the child has

(iii) if such individual had a period of disability which continued until he became entitled to old-age or disability insurance benefits, or (if he has died) until the month of his death, at the beginning of such period of disability or at the time he became entitled to such benefits,
shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits and ending with the month preceding whichever of the following first occurs . . .
(8) In the case of—
(A) an individual entitled to old-age insurance benefits other than an individual referred to in subparagraph (B), or
(B) an individual entitled to disability insurance benefits, or an individual entitled to old-age insurance benefits who was entitled to disability insurance benefits for the month preceding the first month for which he was entitled to old-age insurance benefits,
a child of such individual adopted after such individual became entitled to such old-age or disability insurance benefits shall be deemed not to meet the requirements of clause (i) or (iii) of paragraph (1)(C) unless such child—
(C) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or
(D)(i) was legally adopted by such individual in an adoption decreed by a court of competent jurisdiction within the United States,
(ii) was living with such individual in the United States and receiving at least one-half

of his support from such individual (I) if he is an individual referred to in subparagraph (A), for the year immediately before the month in which such individual became entitled to old-age insurance benefits or, if such individual had a period of disability which continued until he had become entitled to old-age insurance benefits, the month in which such period of disability began, or (II) if he is an individual referred to in subparagraph (B), for the year immediately before the month in which began the period of disability of such individual which still exists at the time of adoption (or, if such child was adopted by such individual after such individual attained age 65, the period of disability of such individual which existed in the month preceding the month in which he attained age 65), or the month in which such individual became entitled to disability insurance benefits, or (III) if he is an individual referred to in either subparagraph (A) or subparagraph (B) and the child is the grandchild of such individual or his or her spouse, for the year immediately before the month in which such child files his or her application for child's insurance benefits, and
(iii) had not attained the age of 18 before he began living with such individual.

5. This expansion of disability insurance coverage paralleled the 1939 extension of retirement and death benefits established in the original Social Security Act of 1935, Pub.L. 74–271, Title II, 49 Stat. 622, to secondary beneficiaries. Pub.L. 76–379, § 202, 53 Stat. 1363.

been adopted by someone else. § 402(d)(3). A stepchild is deemed dependent on her stepparent if at the time of filing the child is living with or receiving at least one-half of her support from the stepparent. § 402(d)(4).

Thus far the statute equates adopted and natural children. This equality, however, is significantly qualified by subsection (d)(8). Under this provision, a child adopted *after* the parent becomes entitled to primary benefits is deemed *not* to be a dependent unless the child is the natural child or stepchild of the insured or was legally adopted by the insured pursuant to order of a court of competent jurisdiction within the United States and was for the year preceding the onset of the disability living with the insured within the United States and receiving at least one-half of her support from the insured.[6] In short, the statute extends secondary coverage to all adopted children directly related by blood or marriage to the insured but denies benefits to other adopted children, i. e., unrelated children, unless they were dependent on the insured prior to the onset of the disability.[7]

Appellant, being unrelated to Mrs. Clayborne and having been born after Mrs. Clayborne became eligible for disability benefits, could not, of course, satisfy the dependency requirement applicable to unrelated adopted children and, therefore, is ineligible to receive secondary benefits.[8] Appellant argues that the statutory classifi-

cation excluding children such as herself creates an unjustified distinction between related and unrelated adopted children, thereby depriving the latter of equal protection, and that the conclusive presumption that unrelated after-adopted children are not dependent on the adopting parent at the time of filing is a deprivation of due process. All reported decisions addressing the constitutionality of § 402(d) in its present form have upheld the validity of the statute. *Williams v. Califano,* 566 F.2d 1044 (5th Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978), *affirming per curiam,* 441 F.Supp. 1045 (E.D.La.1977); *Stanton v. Weinberger,* 502 F.2d 315 (10th Cir. 1974); *Johnson v. Califano,* 462 F.Supp. 656 (D.Kan.1978). In light of recent decisions of the Supreme Court rebuffing equal protection and due process challenges to other statutory classifications in the Social Security Act, we are constrained to do likewise.

## DISCUSSION

In the area of social welfare legislation Congress has considerable latitude in determining eligibility for benefits. A "challenged statute is entitled to a strong presumption of constitutionality." *Mathews v. de Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). The Supreme Court has not phrased the applicable standard uniformly,[9] but the sum of the

---

**6.** An exception is made for a child who is a grandchild of the adopting parent. Such a child is deemed dependent on the insured if the child has lived with and received at least one-half of its support from the insured for the year prior to the filing of the application for secondary benefits. § 402(d)(8)(D)(ii)(III).

**7.** We refer to children not related by blood or marriage to the adopting parent as "unrelated" children. For lack of a better term, we refer to children not dependent on the insured prior to the onset of the disability as "after-adopted" children.

**8.** Appellant would have been eligible for benefits prior to the 1972 amendments to the Social Security Act. Prior to these amendments, § 402(d)(8)(E) provided that a child adopted after the adopting parent becomes eligible for benefits was eligible for secondary benefits if

the child was legally adopted under the supervision of a public or private child-placement agency and by approval of a court of competent jurisdiction within the United States. 42 U.S.C. § 402(d)(8)(E) (1970 ed.) One purpose of the 1972 amendment to § 402(d)(8) was to remove an inequality in the provisions for secondary benefits for dependents of disabled and retired wage-earners, respectively, there having been no provision for secondary benefits to after-adopted children of the latter. See § 402(d)(9) (1970 ed.); H.Rep.No.92–231, 92d Cong.2d Sess., reprinted in [1972] U.S.Code Cong. & Admin.News, pp. 4989, 5039.

**9.** See *Califano v. Jobst,* 434 U.S. 47, 53–54, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977) (upholding statutory classification that is "rational" and not "unthinking"); *Mathews v. Lucas,* 427 U.S. 495, 510, 516, 96 S.Ct. 2755, 49 L.Ed.2d 651

cases is that a statutory classification satisfies constitutional requirements if it is reasonably believed to promote a legitimate legislative purpose.[10]

The Secretary argues that the provision rendering unrelated after-adopted children ineligible for secondary benefits serves two legitimate purposes. First, it implements a policy of limiting secondary benefits to those whom the wage-earner was supporting prior to the loss of her earning capacity, and, second, it prevents abuse of the secondary benefit scheme by denying benefits to children who might be adopted solely to qualify them for such benefits.

■ Appellant does not deny that either of these policies could be a valid legislative policy. However, she argues that the first policy cannot reasonably be ascribed to the Act. We agree. It is true that the legislative history and the case law lend some support to the position that secondary benefits are designed to replace support which the secondary beneficiary had been receiving from the insured prior to the latter's loss of earning capacity. *See, e. g.,* Conf. Rep.No.2165, 86th Cong., 2d Sess., *reprinted in* [1960] U.S.Code Cong. & Admin.News, pp. 3749, 3753; S.Rep.No.2388, 85th Cong., 2d Sess., *reprinted in* [1958] U.S.Code Cong.

& Admin.News, pp. 4218, 4232; S.Rep.No. 1669, 81st Cong., 2d Sess., *reprinted in* [1950], U.S.Code Cong.Serv., pp. 3287, 3317; *Califano v. Jobst,* 434 U.S. 47, 50, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977). Indeed, the House Report on the Social Security Amendments Act of 1972, which changed § 402(d)(8) to its present form, adopted this view of the statutory scheme. *See* H.R.No. 92–231, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4989, 5039. However, the Supreme Court unambiguously rejected this view of the statutory purpose in *Jimenez v. Weinberger,* 417 U.S. 628, 634, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), for reasons disclosed by the secondary benefits provisions themselves.

Under § 402(d)(8), natural-born children or stepchildren who become part of the family unit after the onset of the insured's disability are eligible for secondary benefits even though they could not possibly have been recipients of support from the insured prior to the disability. Accordingly, it is more accurate to say that the legislative policy is to furnish secondary benefits to every child who would have received support from the insured but for the disability.[11] Neither Congress nor the Secretary

(classification valid if it reflects "reasonable empirical judgments"); *Jimenez v. Weinberger,* 417 U.S. 628, 636, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974) (classification must be "reasonably related" to legitimate legislative policy); *Weinberger v. Salfi,* 422 U.S. 749, 768, 95 S.Ct. 2457, 2468, 45 L.Ed.2d 522 (1975) (classification valid if it does not "[manifest] a patently arbitrary classification, utterly lacking in rational justification"); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (classification valid if it has a "reasonable basis").

10. *Mathews* suggests that "reasonable basis," "rational basis," and lack of "arbitrariness" are synonymous. See 429 U.S. at 185, 97 S.Ct. 431.

11. We do not read the passages from *Jobst* and *de Castro* cited by the Secretary as inconsistent with this view of the statutory policy. The Statement in *Jobst* that secondary benefits "were intended to provide persons dependent on the wage earner with protection against the economic hardship occasioned by loss of the wage earner's support" and that "[g]enerally speaking . . . . the categories of secondary

beneficiaries were defined to include persons who were presumed to be dependent on the wage earner at the time of his death, disability, or retirement," 434 U.S. at 50, 98 S.Ct. at 98, refer to the benefits scheme as enacted in 1939. The issue in *Jobst,* whether Congress reasonably assumed that a child's economic dependence on his parents terminates upon his marriage—an assumption that has been incorporated into the secondary benefits scheme since its inception—did not raise any question as to the basis for the child's original entitlement to benefits.

The assertion in *Mathews* that "the primary objective [of the old-age and disability insurance benefits] was to provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old-age," 429 U.S. at 185–86, 97 S.Ct. at 434, is consistent with *Jimenez* inasmuch as a child is disadvantaged by the loss of earning power by one who otherwise would ·furnish support regardless of whether the child enters the family prior or subsequent to the loss.

has suggested a ground for departing from this policy in the case of unrelated adopted children, limiting them to benefits only as a substitute for support that had been received from the insured before the insured's loss of earning capacity.

█ There remains the question of whether § 402(d)(8)'s discrimination against unrelated adopted children should be sustained on the ground that it protects the integrity of the secondary benefit scheme by eliminating an incentive for a primary beneficiary to adopt a child solely to qualify the child for secondary benefits. Appellant does not dispute that this was an objective of Congress, see H.Rep.No.92–931, supra, at 5039, and that it is a legitimate concern for Congress.[12] Rather, appellant argues that the fear that anyone would assume the responsibilities of parenthood simply to qualify a child for Social Security benefits is irrational, at least when applied to adoptions of unrelated children only.[13]

Since the legislation concededly was motivated by a legitimate concern, and the classification at issue in this case is not "suspect" or "suspicious," see Jimenez v. Weinberger, 417 U.S. at 631, 96 S.Ct. 2755, we must affirm the validity of the statute if there is reason to believe that adoptions of unrelated children are more likely to have such an improper motive than adoptions of related children.[14] Lacking empirical data on this subject, the parties rely on Supreme Court decisions involving classifications in other areas of the Social Security Act.

Appellant argues that the statutory classification discriminating against unrelated adopted children must be struck down for the same reasons that Jimenez v. Weinberger, supra, struck down a provision which denied those illegitimate children who could not meet certain objective dependency criteria (proof of domicile and support) the opportunity to demonstrate actual dependence on the insured wage-earner.

In Jimenez the Supreme Court found that the classification of illegitimate children was so overinclusive and underinclusive that the two subclasses—children who met the objective criteria and were deemed dependent and those who did not and were deemed not dependent—"stood on equal footing": The risk of spurious claims of dependency was about the same for both groups. See 417 U.S. at 636–37, 94 S.Ct. 2496. In the present case, however, no such equivalent risk of improper motivation is shown as between adoption of related and unrelated children. Although some related children may be adopted solely or primarily to qualify them for secondary benefits, Congress could reasonably conclude, in the absence of contrary empirical data, that adoptions cementing a blood or matrimonial relationship would usually occur regardless of Social Security Act benefits because of the natural desire of relatives to formalize the relationship among members of a family unit.[15] Similarly, although some unrelat-

12. It should be noted that Congress was concerned with more than just preventing "sham" adoptions, that is, arrangements which have the appearance but not the reality of an adoption. Rather, Congress was concerned with genuine adoptions undertaken for a disapproved reason.

13. The Secretary, for his part, does not dispute that the Claybornes' adoption of appellant was a bona fide adoption undertaken for entirely laudatory reasons. The Secretary argues that appellant's ineligibility for benefits is just an unfortunate consequence of the unavoidable imperfections in a statute enacted in good faith in response to a reasonable concern held by Congress.

14. We think it self-evident that Congress could reasonably believe that a couple would not

have a natural child solely to create a candidate for secondary benefits. However, it is not inconceivable that a couple would adopt a child because its parent or guardian did not have available the supplemental income which the adopting parents could get from Social Security. For present purposes, therefore, the question is whether a basis exists for drawing a distinction for entitlement purposes between adoption of related and unrelated children.

15. The situation with respect to stepchildren is more complicated. Because of the definition of "child" in § 416(e)(2), a stepchild not adopted by the stepparent is ineligible for secondary benefits until one year after the marriage of the child's parent and stepparent. If adopted, however, the stepchild is eligible for benefits immediately, § 402(d)(8)(C). Thus, the risk of an

ed children are not adopted for mercenary purposes—appellant is a case in point—it is not unreasonable to believe that the risk of an improperly motivated adoption is significantly greater when the adopted child is unrelated to the parents than when a blood or marriage relationship has existed. This case is therefore distinguishable from *Jimenez* in that the two subclasses—related and unrelated adoptees—do not stand on the same footing with respect to the legislative purpose.

The Secretary, on the other hand, relies on the Supreme Court's decision in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), which upheld a provision of the Social Security Act that denied spousal survivor benefits to an individual married less than nine months to the insured at the time of his death. The provision was adopted in recognition of the probability that some people will marry in anticipation of their spouses' imminent death solely to obtain property or income ordinarily due a surviving spouse and that some well-intentioned people, anticipating their own imminent death, will marry in order to qualify their spouses for such benefits. The risk of improper motivation in such a context appears, however, to be greater than in the adoption of an unrelated child. A marriage entered into in contemplation of one spouse's imminent death requires a limited commitment, materially and temporally, with only the risk of an unexpected recovery or protracted demise, which may be hedged by the availability of divorce. Adoption of a young child, in contrast, is a

long-term, irrevocable and substantial commitment. Moreover, society has not looked askance at an adoption entitling the child or parent to a material benefit designed to offset in whole or part the cost of rearing the child.[16]

■ Although the presupposition as to a possible improper motive underlying adoption of unrelated children is less cogent than that sustained in *Salfi*, this does not render § 402(d)(8) unconstitutional. When, as here, a statute does not discriminate on racial grounds or against a suspect class, Congress' judgment will not be overturned in the absence of persuasive evidence that it had no reasonable basis for drawing the lines it did. We are unaware of any empirical data pertaining to the likelihood of improperly motivated adoptions. Nor does the legislative history of § 402(d)(8) indicate that Congress had any such data before it. Some may consider it far-fetched, particularly in view of the rigorous screening procedures in effect in most states before a child may be adopted, to believe that persons would assume the burdens of parenthood just to qualify a child for secondary Social Security benefits. But in the absence of any reason to think Congress acted out of ill-will, we must accord it considerable leeway in enacting statutory classifications, and we cannot assume that it has acted unreasonably. Accordingly, we hold that the classification in § 402(d)(8) distinguishing between related and unrelated adopted children does not in itself deprive the latter of equal protection.

improperly motivated adoption may be especially low because the child would become eligible for benefits regardless of the adoption. Congress may have determined that the loss occasioned by an adoption of a stepchild effected solely to accelerate the receipt of benefits was not significant enough to warrant safeguarding against it.

16. Appellant points out that under § 416(c)(4) a surviving spouse is eligible for spousal death benefits notwithstanding the fact that the deceased spouse died within nine months of the marriage if the couple had while married adopted a child under 18. Appellant argues that this qualification of the *per se* exclusion demonstrates that Congress itself has presumed the

good faith of every adoption. This analysis, however, confuses two distinct congressional concerns. In the context of surviving spousal benefits, Congress was concerned with the risk of marriages entered into as a short-term expedient. If a particular couple undertakes a long-term irrevocable commitment, such as adoption of a child, this risk is virtually nonexistent as to them. In the context of secondary benefits, however, the risk involved the motive for undertaking the commitment. Congress no doubt believed that few people would marry and adopt a child in contemplation of one spouse's death just to qualify the spouse for survivor benefits.

■ There remains the question of whether Congress had a reasonable basis for enacting a *per se* exclusion of benefits for unrelated after-adopted children as opposed to a rule denying them automatic eligibility but allowing them or their adopting parents to demonstrate that the adoption was properly motivated. *Compare Mathews v. Lucas, supra, with Jimenez v. Weinberger, supra.* Alternatively, one might question whether Congress had a reasonable basis for adopting the broad exclusion of unrelated after-adopted children as opposed to the narrower exclusion abandoned by Congress in 1972.

We do not think the statute can be invalidated on either of these grounds. As to the first, the "administrative difficulties of individual eligibility determinations are without doubt matters which Congress may consider when determining whether to rely on rules which sweep more broadly than the evils with which they seek to deal." *Salfi, supra,* 422 U.S. at 784, 95 S.Ct. at 2476. Intent and motive are usually difficult to prove. Congress was presumably aware of this difficulty and of the administrative burden of individual eligibility determinations when it decided to adopt a *per se* rule. If the procedure Congress chose is permissible, we cannot strike it down because some other procedure causing less hardship would be adequate. Nor can we redraw the substantive lines Congress chose because some other classification appears to satisfy the legislative policy without disqualifying as many deserving individuals. *Salfi, supra,* 422 U.S. at 777, 95 S.Ct. 2457. The Congress which adopted the 1972 amendments to the Social Security Act presumably concluded that it could not rely on the screening procedures of private and public child-placement agencies and state courts to intercept mercenary adoptions. This is a decision Congress was entitled to make. *Salfi, supra,* 422 U.S. at 781, 95 S.Ct. 2457. Accordingly, we hold that § 402(d)(8) does not deprive appellant of the equal protection of the laws.

■ We turn next to appellant's due process claim. Appellant contends that § 402(d)(8) flies in the face of the principal developed in *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), stating that a statute which purports to condition eligibility for a benefit upon satisfaction of a specified criterion—in this case a child's dependency on its parent—cannot, consistently with due process, conclusively presume that certain individuals fail to satisfy that criterion. Appellant argues that § 402(d)(8) violates this principle because it purports to confer secondary benefits upon children dependent on a primary beneficiary but conclusively presumes that unrelated after-adopted children are not dependent on their adopting parent.

Whatever viability the above-mentioned cases retain in their respective contexts, the Supreme Court has all but ruled them inapplicable to social welfare legislation. *See Salfi, supra,* 422 U.S. at 771–73, 95 S.Ct. 2457. *Jimenez* is of little help to appellant since the Court's denunciation of the conclusive presumption in that case was predicated on a finding that the presumption applied to only one of two similarly situated groups. In other words, the conclusive presumption was invalid because it denied equal protection. *See* 417 U.S. at 636, 96 S.Ct. 2755. *See also, Jobst, supra,* 434 U.S. at 53, 98 S.Ct. 95 (indicating that a general rule incorporating a factual assumption is valid as long as it does not reflect a classification violating equal protection). Having determined that the statutory discrimination against unrelated after-adopted children does not deprive such children of equal protection, we must conclude that it does not deprive them of due process either.[17]

Accordingly, the decision of the district court sustaining the constitutionality of the

---

17. In any event the statute does not truly presume that appellant is not dependent on the insured; rather it presumes that the adoption might have been improperly motivated. "Dependence," in the context of this case is just a technical device to achieve the outcome Congress desired. We do not reject appellant's due process claim on the ground that the statute

statutory treatment of unrelated after-adopted children is affirmed.

does not presume adverse to appellant, a fact which it purportedly makes the criterion for eligibility for benefits. Rather, we reject it on the ground that a legislative classification in a social welfare statute which satisfies equal protection *ipso facto* satisfies due process.