Maria RODRIGUEZ, Plaintiff, Appellant,

v.

SECRETARY OF HEALTH, EDUCATION & WELFARE, Defendant, Appellee.

No. 80–1381.

United States Court of Appeals, First Circuit.

Argued Feb. 4, 1981.

Decided March 30, 1981.

---

Lyssette Morales Vidal, P. R. Legal Services, Caguas, P. R., with whom Manuel Medina Jaca, Rio Piedras, P. R., was on brief, for plaintiff, appellant.

John W. Wojciechowski, Atty., Dept. of Health and Human Services, Baltimore, Md., with whom Julio Morales-Sanchez, U. S. Atty., San Juan, P. R., Alice Daniel, Asst. Atty. Gen., Washington, D. C., Randolph W. Gaines, Chief of Litigation, and Lillie Price, Atty., General Counsel, Dept. of Health and Human Services, Baltimore, Md., were on brief, for defendant, appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Maria Rodriguez challenges the Secretary's denial of Social Security child benefits for her adopted son. Lorenzo Santiago, Ms. Rodriguez's husband and the insured wage earner, became eligible for retirement insurance benefits in January 1966. In May 1975, a child was born to Ms. Rodriguez's sister. One year later, Lorenzo Santiago and Maria Rodriguez adopted the child, who was thereafter known as Antonio Santiago. It is undisputed that Antonio has lived with his adoptive parents since birth and that he is dependent upon them. The Secretary denied Ms. Rodriguez's application for benefits for Antonio on the ground that the

·child failed to meet the requirements of 42 U.S.C. § 402(d)(8).[1]

Ms. Rodriguez claims that section 402(d)(8) violates the equal protection and due process components of the fifth amendment by discriminating against adopted children who are not the natural or stepchildren of their adoptive parents and by erecting an irrebuttable presumption that such adopted children are not dependent upon their adoptive parents. She claims also that the Secretary should have applied Puerto Rico law regarding adoptions in determining Antonio's status. The district court upheld the statute and its application, and we affirm.

■ The challenged statutory provision creates two relevant classifications among children born after a parent becomes eligible for social security benefits. First, the statute treats natural children differently from adopted children. Second, the statute treats adopted children who are also natural children or stepchildren of their adoptive parents differently from those who are not. Neither of these distinctions involves any inherently suspect classification;[2] nor do

1. 42 U.S.C. § 402 provides in pertinent part:

"(d)(1) Every child (as defined in section 416(e) of this title) of an individual entitled to old-age or disability insurance benefits, or of an individual who dies a fully or currently insured individual, if such child—

(A) has filed application for child's insurance benefits,

(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, or (ii) is under a disability (as defined in section 423(d) of this title) which began before he attained the age of 22, and

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed, . . . .

shall be entitled to a child's insurance benefit for each month, . . . .

(8) In the case of—

(A) an individual entitled to old-age insurance benefits (other than an individual referred to in subparagraph (B)), or

(B) an individual entitled to disability insurance benefits, or an individual entitled to old-age insurance benefits who was entitled to disability insurance benefits for the month preceding the first month for which he was entitled to old-age insurance benefits,

a child of such individual adopted after such individual became entitled to such old-age or disability benefits shall be deemed not to meet the requirements of clause (i) or (iii) of paragraph (1)(C) unless such child—

(C) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or

(D)(i) was legally adopted by such individual in an adoption decreed by a court of competent jurisdiction within the United States,

(ii) was living with such individual in the United States and receiving at least one-half of his support from such individual (I) if he is an individual referred to in subparagraph (A), for the year immediately before the month in which such individual became entitled to old-

age insurance benefits or, if such individual had a period of disability which continued until he had become entitled to old-age insurance benefits, the month in which such period of disability began, or (II) if he is an individual referred to in subparagraph (B), for the year immediately before the month in which began the period of disability of such individual which still exists at the time of adoption (or, if such child was adopted by such individual after such individual attained age 65, the period of disability of such individual which existed in the month preceding the month in which he attained age 65), or the month in which such individual became entitled to disability insurance benefits, or (III) if he is an individual referred to in either subparagraph (A) or subparagraph (B) and the child is the grandchild of such individual or his or her spouse, for the year immediately before the month in which such child files his or her application for child's insurance benefits, and

(iii) had not attained the age of 18 before he began living with such individual.

In the case of a child who was born in the one-year period during which such child must have been living with and receiving at least one-half of his support from such individual, such child shall be deemed to meet such requirements for such period if, as of the close of such period, such child has lived with such individual in the United States and received at least one-half of his support from such individual for substantially all of the period which begins on the date of birth of such child."

2. Rodriguez relies heavily on *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), in which the Court struck down eligibility criteria for child's benefits based in part on the illegitimate status of the child. *Jimenez* did not, however, deal with adopted children. In equal protection analysis, illegitimates have often been regarded as a disadvantaged group entitled to a high level of protec-

the distinctions impose a burden on the exercise of any fundamental right. The statute is therefore entitled to a strong presumption of constitutionality, which may be rebutted only by a showing that it "bears no rational relationship to a legitimate governmental interest." *Frontiero v. Richardson*, 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583 (1973); *Mathews ·v. DeCastro*, 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976); *Weinberger v. Salfi*, 422 U.S. 749, 768–74, 95 S.Ct. 2457, 2468–71, 45 L.Ed.2d 522 (1975); *Richardson v. Belcher*, 404 U.S. 78, 84, 92 S.Ct. 254, 258, 30 L.Ed.2d 231 (1971).

Every court that has addressed the question thus far has concluded that section 402(d)(8) meets this test. *Brehm v. Harris*, 619 F.2d 1016 (3d Cir. 1980); *Clayborne v. Califano*, 603 F.2d 372 (2d Cir. 1979); *Stanton v. Weinberger*, 502 F.2d 315 (10th Cir. 1974); *Luna v. Secretary of HEW*, Unempl. Ins.Rep. (CCH) ¶ 16,195 (D.P.R.), *aff'd*, 588 F.2d 817 (1st Cir. 1978), *app. dismissed* and *cert. denied*, 442 U.S. 935, 99 S.Ct. 2873, 61 L.Ed.2d 305 (1979); *Johnson v. Califano*, 462 F.Supp. 656 (D.Kan.1978); *Williams v. Mathews*, 441 F.Supp. 1045 (E.D.La.1977), *aff'd, Williams v. Califano*, 566 F.2d 1044 (5th Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978). We reach the same conclusion.

■ In providing for child's insurance benefits, Congress sought to furnish support for those who would have received support from the insured wage earner, but for his or her retirement or disability. *Clayborne v. Califano*, 603 F.2d at 377. At the same time, Congress sought to discourage economically motivated creation of family relationships by excluding from benefits persons whose relationships to the wage earner might not have existed in the absence of the prospect of eligibility for benefits. The Congressional purpose was clearly legitimate, and we are unable to say that Congress could not reasonably conclude

that the classifications in issue here would further that purpose. Congress could believe that couples who would not bear a child for the purpose of gaining additional benefits might adopt a child, particularly the child of a friend or relative, with the prospect of conferring eligibility for benefits on the child as at least partial motivation. *Clayborne v. Califano*, 603 F.2d at 378 n.14. Similarly, Congress could reasonably believe that adoption of a child who is the adoptive parent's natural or stepchild would be less likely to be motivated by the prospect of benefits than would adoption of a child who does not already have such a relationship with the adoptive parent. *Clayborne v. Califano*, 603 F.2d at 378.

■ Rodriguez argues that no evidence has been offered to show that "anyone actually would or could adopt merely to qualify for child benefits." But the burden is on her to demonstrate that the statute is irrational; Congress need not provide empirical evidence for its legislative judgments. *Vance v. Bradley*, 440 U.S. 93, 110–11, 99 S.Ct. 939, 950, 59 L.Ed.2d 171 (1979); *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976). She relies on the strict supervision of adoptions provided by state courts and child welfare agencies, arguing that this oversight prevents improperly motivated adoptions. But Congress could have believed that, in some cases, state officials might find that a child's interests would be served by an adoption that would improve the child's economic well-being by rendering him or her eligible for federal benefits. Adoption under such circumstances, while perfectly proper and not in any sense fraudulent, would circumvent Congress' intention to limit benefits to those who would otherwise have received support from the insured wage earner. *Brehm v. Harris*, 619 F.2d at 1020–21; *see Clayborne v. Califano*, 603 F.2d at 378 n.12.

tion. See *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *but see*

*Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). The Supreme Court has not, to our knowledge, dealt similarly with adopted children.

Rodriguez also cites 42 U.S.C. § 416(c)(4), which makes a surviving spouse eligible for benefits, notwithstanding short duration of the marriage, if the couple had adopted a child. Based on this provision, Rodriguez argues that Congress has conclusively presumed the good faith of every adoption. As the court held in *Clayborne v. Califano*, 603 F.2d at 379 n.16, this argument mistakes the purpose of section 416(c)(4); in the context of marriages of short duration, Congress viewed adoption of a child as evidence that the marriage was entered into for reasons other than the expectation of survivor's benefits on the early death of a spouse. That judgment has no necessary bearing on Congressional views of the possible motives of adoptive parents applying for child's benefits.

▮▮▮▮ Ms. Rodriguez next argues that the statute violates due process by creating an irrebuttable presumption that children in the excluded category are not dependent on their adoptive parents. Citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), and *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), she argues that each child is entitled to an opportunity to prove his or her dependence. The Supreme Court considered and rejected a nearly identical argument with respect to eligibility requirements for social security benefits in *Weinberger v. Salfi*, 422 U.S. 749, 768–74, 95 S.Ct. 2457, 2468–71, 45 L.Ed.2d 522 (1975), and that case is controlling here. Like the statutory classification in that case, the provision in issue here establishes objective criteria for eligibility, criteria which we believe to be rationally related to a legitimate legislative goal; and each applicant is free to present evidence that he or she meets these criteria. No constitutionally protected liberty interest is affected, as in *Stanley*, nor does the statute purport to grant benefits to all persons in a subjectively defined category, but then preclude proof of one's membership in that category, as in *Vlandis*. *Weinberger v.*

*Salfi*, 422 U.S. at 771–72, 95 S.Ct. at 2469–70. As in *Salfi*, the statutory criteria applied here are undoubtedly to some degree both overinclusive and underinclusive, allowing benefits for some children whose adoptions are motivated by the prospect of eligibility, while excluding others who were adopted entirely for other reasons. *Salfi*, 422 U.S. at 776, 95 S.Ct. at 2472. Nevertheless, Congress is entitled to employ a generalized rule, despite its imperfection, when it "can rationally conclude . . . that the difficulties of individual determinations outweigh the marginal increments in the precise effectuation of congressional concern which they might be expected to produce." *Salfi*, 422 U.S. at 785, 95 S.Ct. at 2476; *Clayborne v. Califano*, 603 F.2d at 380; *Williams v. Mathews*, 441 F.Supp. at 1049.

▮▮▮▮ Ms. Rodriguez asserts finally that in determining the status of her son the Secretary should have applied the law of Puerto Rico, which she characterizes as treating adopted children more favorably than the laws of the mainland states do. This argument needs no more response than a citation to the supremacy clause, Art. 6, cl. 2 of the United States Constitution. Section 402(d)(8) prescribes the treatment of adopted children for purposes of child's benefits, and the federal statute must prevail, despite any conflict with Puerto Rico law.[3] Rodriguez offers an extensive discussion of the social and cultural role of adoption in Puerto Rico society, arguing that the legislative scheme is particularly arbitrary when applied in that context. It might be true that the statutory classification is less well-suited to its purpose when applied in Puerto Rico or to specific cultural groups elsewhere within our diverse society than when applied to the nation as a whole. This observation would not, however, deprive the statute of any rational relationship to its legitimate objectives.

*Affirmed.*

3. Rodriguez relies on section 416(h)(2)(A), which incorporates state laws of intestate succession for purposes of determining whether a parent-child relationship exists. But section 402(d)(8) does not suggest that an adopted child is not a "child" for purposes of child benefits; rather, it defines a category of children who are not eligible for child benefits.