**Sylvia HILL, James Banker and Gloria Butler**

v.

**Matthew J. GILL, Jr., individually and in his capacity as Director of the Rhode Island Department of Transportation, Craig E. Callen, individually and in his capacity as Coordinator of School Bus Transportation and Thomas Harrington, individually and in his capacity as Deputy Director, Division of Motor Vehicles, State of Rhode Island.**

Civ. A. No. 86–0503T.

United States District Court, D. Rhode Island.

Jan. 13, 1989.

Milton Stanzler, Providence, R.I., for plaintiffs.

Terence J. Tierney, Sp. Asst. Atty. Gen., Providence, R.I., for defendants.

## OPINION AND ORDER

TORRES, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983. In it, the plaintiffs challenge the constitutionality of regulations promulgated by the Rhode Island Department of Transportation (the "DOT") which make an individual's criminal record a basis for denying that individual a permit to operate school buses.

### FACTS

The plaintiffs are Sylvia Hill, James Banker and Gloria Butler. Prior to June of 1986, they were licensed by the State of Rhode Island to operate school buses and were employed in that capacity by local school districts. The defendants are DOT officials having varying degrees of responsibility for the issuance of such licenses.

The pertinent facts are set forth in a "Statement of Agreed Facts" filed by the parties. It recites that on June 26, 1986, the DOT, in apparent response to several well-publicized incidents involving school bus drivers, adopted "Emergency Rules and Regulations Regarding Criteria for Denying Certification of a School Bus Driver." Under those regulations, anyone convicted of a felony, anyone convicted of a misdemeanor within the preceding twelve-month period and/or anyone convicted of more than one misdemeanor within the preceding five-year period was rendered ineligible for certification as a school bus driver. Pursuant to those regulations, the DOT either cancelled or refused to renew the licenses of all three plaintiffs. In the cases of Banker and Butler, such action was based upon prior misdemeanor convictions. In the case of Hill, it was based upon felony charges brought against her in January of 1972 for possession of narcotic drugs, maintenance of a narcotics nuisance and larceny.

In August of 1986, the plaintiffs commenced this action seeking a declaration that the regulations were unconstitutional, injunctive relief, damages, and attorney's fees. At the same time, they appealed the losses of their licenses to the Rhode Island District Court which stayed the cancellations pending resolution of the appeals. Those appeals are still pending; but, in the meantime, the plaintiffs have been permitted to return to work.

On January 13, 1987, the DOT adopted permanent "Rules and Regulations for School Bus Driver Certification" which modified the emergency regulations in two respects. First, they provided dispensation for felons whose convictions were "expunged by court order or otherwise rescinded or pardoned." This change is of only academic interest to Hill since there is no indication that any conviction of hers has been expunged, rescinded or pardoned.

In addition, the permanent regulations made disqualification for misdemeanor convictions discretionary rather than mandatory. Counsel indicate that the latter change has enabled Banker and Butler to regain their licenses. Consequently, in their "Statement of Agreed Facts," they describe the issues to be determined as follows:

"In light of the change in the regulations ... most issues raised by plaintiff's [sic] complaint either have become moot or have been resolved in proceedings in a non-federal forum. Other than the issues of damages and attorney fees which the parties agree will be determined af-

ter all liability issues are resolved, the parties agree that the sole issue to be decided by the court is the issue as to the legality of the Department of Transportation's regulation making mandatory the denial of a permit to any person who has been convicted of a felony...."

## DISCUSSION

### I. *The Procedural Dilemma*

■ The first question the Court must address is whether it should pass upon the constitutionality of the felony regulation. The general rule is that a federal court should refrain from deciding constitutional issues if a case may be disposed of on questions of state law or on other grounds. *See Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 191, 29 S.Ct. 451, 454, 53 L.Ed. 753 (1909); *Ashwander v. TVA*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

In this case, such an alternative ground appears to exist. Though the parties have neither raised nor briefed the issue, it is questionable whether Hill was a convicted felon, within the meaning of Rhode Island law, at the time her school bus driver's certificate was revoked. According to the Statement of Agreed Facts and the representations of counsel, she pleaded nolo contendere to the charges against her and was placed on probation for a period of three years which she satisfactorily completed on January 20, 1985. There is no indication that she served a prison term or received a suspended or deferred sentence. Consequently, her status appears to be governed by R.I. Gen. Laws § 12–18–3 (Supp.1981) which provides that:

"Whenever any person ... shall plead nolo contendere, and [the] court places said person on probation ... then, upon the completion of the probationary period, and absent a violation of the terms of said probation, said plea and probation shall not constitute a conviction for any purpose.

This section shall not apply to any person who is sentenced to serve a term in the adult correctional institution or who is

given a suspended or deferred sentence in addition to probation."

Nevertheless, this Court could not resolve Hill's claim on that ground even if she had asserted it. To do so would, in effect, require the Court to order state officials to comply with state law. That is a path which federal courts have now been admonished not to follow because it would violate the 11th Amendment. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Consequently, if Hill seeks an injunction against the defendants on the basis that they violated Rhode Island law by treating her as a convicted felon, she must apply to a state court.

In any event, the possibility that a state court might resolve Hill's claim on state law grounds does not relieve this Court of its responsibility to rule on her constitutional claims. Hill has standing to challenge the felony regulation even though she may not be a felon because the regulation was, in fact, applied to her in a manner that adversely impacted constitutionally recognized rights. *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Nor is there any basis upon which this Court may properly abstain from deciding that challenge. Federal courts have a "virtually unflagging obligation ... to exercise jurisdiction given to them" and even "the opportunity to avoid the decision of a constitutional question does not alone justify abstention." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 815 n. 21, 817, 96 S.Ct. 1236, 1244, 1245 n. 21, 1246, 47 L.Ed.2d 483 (1976).

Consequently, the Court finds itself facing a dilemma similar to that confronted by the First Circuit in *Cuesnongle v. Ramos*, 835 F.2d 1486 (1st Cir.1987). It is torn by the conflicting admonitions of *Siler* to refrain from deciding constitutional issues if alternative grounds exist; those of *Pennhurst* that prevent it from resolving the non-constitutional issues when doing so would require ordering state officials to

comply with state law and those of *Colorado River* that prevent it from abstaining even to avoid unnecessarily deciding a constitutional question.[1] Like the First Circuit, this Court concludes that it is obligated to address the constitutional claims asserted despite the presence of potentially dispositive state law issues.

## II. *Constitutionality of the Regulation*

The plaintiff's constitutional challenge is somewhat ambiguous. It appears to consist of two contentions. The first is that the regulation in question violates equal protection principles because there is no demonstrable connection between an individual's prior conviction of a felony and his or her fitness to operate a school bus. The second is that the regulations deprive convicted felons of substantive due process by failing to afford them an opportunity to rebut the presumption that they are unqualified to operate school buses. These arguments will be addressed in turn.

### A. Equal Protection

■ In passing upon the equal protection claim, the Court must first determine the applicable standard of review. When a challenged regulation restricts fundamental rights or adversely affects members of a protected class, it should be subjected to strict scrutiny. Such a regulation will be upheld only to the extent necessary to promote a compelling state interest. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). A regulation not falling within that category passes constitutional muster if it is conceivable that the classification bears a rational relationship to a legitimate governmental interest. *E.g., Parham v. Hughes*, 441 U.S. 347, 351–52, 99 S.Ct. 1742, 1745–46, 60 L.Ed.2d 269 (1978); *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed. 2d 491 (1970). In this case, it is clear that the class in question (i.e. persons convicted

of felonies) is not a protected one. *Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1st Cir.1970). It is equally clear that public employment is not a fundamental right. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312–13, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976); *see also Upshaw, supra.* Therefore, the applicable standard is the rational basis test.[2] In determining whether that test has been satisfied, the challenged regulation is presumed to be constitutional and the plaintiff bears the burden of proving that it is not (i.e. that it bears no rational relationship to a legitimate state interest). *See e.g., Parham*, 441 U.S. at 351, 99 S.Ct. at 1745; *Rodriguez v. Secretary of Health, Education & Welfare*, 644 F.2d 918 (1st Cir. 1981).

■ Here, there is no question that the regulation in question passes the test with flying colors. It is difficult to imagine a more legitimate state interest than that of protecting vulnerable and impressionable school-age children from the possibility of either physical harm or immoral influences. Nor can there be any doubt that the selection of school bus drivers directly impacts upon that interest. While being transported to school, children are physically confined in the bus which constitutes a closed environment largely controlled by the only adult present, the operator. In effect, they are totally entrusted to the care of the operator. Their welfare depends not only on the operator's driving skills, but also on his or her good judgment and moral character. Therefore, the only issue presented is whether DOT could rationally conclude that convicted felons, as a class, may be lacking in those qualities.

The plaintiff argues that it is irrational to simply assume that convicted felons lack moral character or any of the other qualities required of school bus drivers. She suggests that such a conclusion must be

---

1. It should be noted that none of the recognized abstention doctrines appear to apply in this case.

2. The plaintiff argues that strict scrutiny should be employed because she is black. The Court finds this argument to be totally without merit.

The regulation, on its face, makes no reference whatsoever to race. Furthermore, the record is devoid of any evidence that it either has been applied or was intended to apply differently to blacks than to other racial groups.

the product of specific findings supported by adequate empirical data. That contention was rejected long ago in *Hawker v. New York*, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) where the Supreme Court stated:

> "When the legislature declares that whoever has violated the criminal laws of the State shall be deemed lacking in good moral character it is not laying down an arbitrary or fanciful rule—one having no relation to the subject matter, but is only appealing to a well recognized fact of human experience...." *Id.* at 196, 18 S.Ct. at 576.

The plaintiff's contention is also contrary to the law in this circuit which recognizes a state's right to disqualify convicted felons, as a class, from employment in positions of public trust. *Upshaw v. McNamara, supra* (convicted felon disqualified from serving as a police officer even though subsequently pardoned); *see also Reddy v. United States*, 403 F.2d 26, 27 n. 1 (1st Cir. 1968), *cert. denied* 393 U.S. 1085, 89 S.Ct. 871, 21 L.Ed.2d 778 (1969); *accord, e.g., Darks v. City of Cincinnati*, 745 F.2d 1040, 1043 (6th Cir.1984); *Schanuel v. Anderson*, 708 F.2d 316 (7th Cir.1983) (upholding state statute that prohibited licensed private detective agencies from employing felons as armed guards or investigators for a period of ten years following discharge of sentence).

The plaintiff's reliance on *DeVeau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1959) is misplaced. There, the Court upheld a federal statute in effect banning felons from holding office in the longshoreman's union as part of an effort to eliminate corruption in waterfront labor organizations. It specifically rejected the contention that applying the ban to all felons was irrational. While the Court did cite the extensive legislative investigations that led to enactment of the statute, it did not indicate that such investigations were a sine qua non of its validity.

The plaintiff also cites a number of other cases that are either readily distinguishable from this one or at variance with the law in this circuit. Most involve ordinances or statutes that permanently bar felons from all forms of public employment. As previously indicated, the permanency of such a ban does not, alone, render it invalid. *Upshaw v. McNamara, supra.* Moreover, in this case, the disqualification contained in the final regulation is not necessarily permanent. The regulation exempts those whose convictions have been pardoned, expunged,[3] or otherwise rescinded. Nor does the ban extend to all categories of public employment. It is restricted to employment in the sensitive position of school bus drivers. Thus, it provides a reasonably suitable vehicle for removing the disability and is carefully tailored to achieve its relatively limited objective.

In short, while a past felony conviction does not invariably mean that an individual lacks the requisite traits to serve as a school bus driver, disqualification on that basis cannot be deemed irrational. When acting in a regulatory or quasi legislative capacity, the state must necessarily wield a somewhat broad brush. The possibility that it may not draw perfectly fine lines does not deprive the state of the power to draw any lines. All that is required is that the lines be rationally related to achievement of a legitimate governmental purpose. In this case, they are.

**B. Substantive Due Process**

■ The plaintiff further argues that her substantive due process rights have been violated because the regulation in question creates an irrebuttable presumption that all ex-felons are unfit to serve as school bus drivers. In other words, she suggests that the regulation is invalid because it does not provide a mechanism for her to demonstrate that, unlike convicted felons, in general, she is qualified for the position.

---

3. R.I. Gen. Laws § 12–1.3–2 (Supp.1981) permits expungement of a felony conviction 10 years or more after the completion of sentence

if the petitioner is a first offender and the crime does not involve the use of violence.

To the extent that this is merely another way of asserting that the classification employed is impermissibly overinclusive (i.e. that it is not strictly limited to the extent necessary to achieve its purpose), it is inapplicable to a rational basis analysis. Thus, the courts have applied the irrebuttable presumption doctrine (i.e. that a requirement is unconstitutional if it presumes a fact that is not necessarily or universally true) only in cases where the strict or intermediate scrutiny tests are employed. *See*, L. Tribe, *American Constitutional Law* § 16–34, at 1622–24 n. 35 (2d ed. 1988). Where the right asserted does not warrant strict or intermediate scrutiny, both due process and equal protection requirements are satisfied unless the classification invidiously discriminates or lacks a rational relation to a legitimate governmental objective. *Weinberger v. Salfi*, 422 U.S. 749, 769–773, 95 S.Ct. 2457, 2468–2471, 45 L.Ed.2d 522 (1975).

In such cases, a classification does not offend the Constitution simply because it fails to delineate the objects of legislative concern with unerring surgical precision. Under the rational basis analysis, the test of a regulation's validity is not whether it applies only to those persons who, in fact, are the sources of the problem at which the legislation is directed. Rather, the test is whether the legislative body rationally could have concluded both that the classification would achieve its intended purpose and that "... the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule." *Weinberger v. Salfi, supra* at 778, 95 S.Ct. at 2473.

As previously stated, the first part of that test clearly has been satisfied in this case. It was patently rational for the DOT to conclude that refusing to license convicted felons as school bus drivers would help prevent the kinds of occurrences about which it was concerned.

It was equally rational for the DOT to conclude that the salutary effect of such a policy and the burdens and practical difficulties associated with attempting to make individual determinations of fitness outweighed the risk that its regulation might exclude some otherwise qualified persons. It is apparent that individualized inquiries of the type suggested by plaintiffs not only would require appreciable resources for conducting investigations and hearings, but, also, might not contribute much to the process of further refining the challenged classification. While such efforts to achieve perfect justice would be commendable, they are not required and a policy decision not to exert them does not render the regulation irrational.

### III. *Damages and Attorneys' Fees*

As recited in the "Statement of Agreed Facts," the only remaining issues are those relating to damages and attorneys' fees. Since the Court has found the felony regulations to be valid, Hill's claims for both damages and attorneys' fees must be denied and dismissed. *See e.g., Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir. 1978).

The claims of Banker and Butler for both damages and attorneys' fees must also be denied and dismissed. The damages they claim arise from the temporary loss of employment they suffered as a result of the emergency regulation regarding misdemeanor convictions. To prevail, they must demonstrate that the regulation was invalid. They have failed to make any such showing. In fact, they have agreed that the sole issue before the Court is the legality of the *felony* regulation and that, except for damages and attorneys' fees, the other issues raised by the complaint are moot. Consequently, they are not entitled to damages.[4]

Their failure to assert or establish the invalidity of either the emergency or permanent misdemeanor regulations is also dispositive of their claim for attorneys' fees. 42 U.S.C. § 1988 provides for an award of attorneys' fees to the "prevailing" party in a § 1983 action. Since there has been no determination that any of the regulations in question is invalid, the plain-

---

**4.** The plaintiffs' claims for damages may also be barred by the doctrine of sovereign immunity.

tiffs cannot claim to be the prevailing party on that account.

However, that does not end the inquiry. A litigant may be deemed a prevailing party if, as a result of his suit, he obtains a significant benefit encompassed by his claim. It is not necessary that the benefit be conferred by a contested judgment or some other formal judicial action. A plaintiff may be considered a prevailing party when his "... lawsuit acts as a 'catalyst' in prompting defendants to take action to meet plaintiff's claims...." *Nadeau, supra* at 279. In order to satisfy that requirement, the plaintiff must demonstrate both that his suit caused the defendant to act and that such action was required by law. As the Court said in *Nadeau, supra:*

> If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.

Since Banker and Butler have failed to prove that any of the challenged regulations were invalid, they cannot show that the defendants' action in modifying those regulations was required by law. Consequently, they do not qualify as prevailing parties within the meaning of 42 U.S.C. § 1988.

## CONCLUSION

For all of the foregoing reasons, the Clerk is hereby directed to enter judgment for the defendants denying and dismissing all of the plaintiffs' claims including those for attorneys' fees. It is further hereby ordered that any motion by the defendants for an award of attorneys' fees together with supporting memoranda and affidavits must be filed within 20 days.

IT IS SO ORDERED.