Angela WILLIAMS, by and through her next of friend and father, Frank Williams, on her behalf, Plaintiff,

v.

F. David MATHEWS, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 76–382.

United States District Court, E. D. Louisiana, Section C.

April 11, 1977.

James W. Blackman, TA, New Orleans, Legal Assistance Corp., Jack M. Stolier and

Lois C. Davis, New Orleans, La., for plaintiff.

Ford J. Dieth, Asst. U. S. Atty., New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

This action challenges the constitutionality of a denial of child's insurance benefits under Title II of the Social Security Act to a child adopted after the wage earner became entitled to disability benefits. The plaintiff asserts that 42 U.S.C. 402(d)(8), which mandates the denial of benefits, violates the plaintiff's rights guaranteed by the fifth amendment to the Constitution, including both the right to due process in the traditional sense and the right to equal protection of the laws, as subsumed within the meaning of the fifth amendment due process clause. Since it has not been shown that 42 U.S.C. 402(d)(8) denies any of these rights, the defendant's motion for summary judgment is granted.

## I

On January 15, 1974, the wage earner, Frank Williams, filed an application on behalf of Angela Williams, for child's insurance benefits under Title II of the Social Security Act. After full administrative hearings, and review, the application was denied.

## II

Section 202(d)(1) of the Social Security Act ("the Act"), 42 U.S.C. 402(d)(1) provides a "child's insurance benefit" for every "dependent" "child" of an individual receiving benefits as these terms are defined in the Act. An adopted child is deemed dependent on his adopting parent "unless, at [the time the adopting parent filed an application for benefits] such individual was not living with or contributing to the support of such

child *and*—(A) such child is neither the legitimate nor adopted child of such individual . . .." 42 U.S.C. 402(d)(3). (Emphasis Supplied.) Section 202(d)(8) of the Act, 42 U.S.C. 402(d)(8), provides in pertinent part:

> [A] child of such individual adopted after such individual became entitled to such old-age or disability insurance benefits shall be deemed not to meet the requirements of [the preceding parts of the statute].
>
> (C) unless such child—
>
> \* \* \* \* \* \*
>
> (D)(i) was legally adopted by such individual in an adoption decreed by a court of competent jurisdiction within the United States,
>
> (ii) was living with such individual in the United States and receiving at least one-half of his support from such individual . . . (II) if he is an individual [receiving disability benefits], for the year immediately before the month in which began the period of disability of such individual which still exists at the time of adoption (or, if such child was adopted by such individual after such individual attained age 65, the period of disability of such individual which existed in the month preceding the month in which he attained age 65), or the month in which such individual became entitled to disability insurance benefits . . ..

The words do not, in Judge Learned Hand's words,[1] dance in meaningless procession; indeed they do not dance at all. They are leaden and lifeless, scarcely skin of living thought, but they do yield a meaning of a fashion.

## III

The wage earner, Frank Williams, was entitled to benefits beginning with the

---

1. Learned Hand, "Thomas Walter Swan", 57 Yale L.J. 169 at 169 (1947),

 In my own case the words of such an act as the Income Tax, for example, merely dance before my eyes in a meaningless procession: cross-reference to cross-reference, exception upon exception—couched in abstract terms that offer no handle to seize hold of—leave in my mind only a confused sense of some vitally important, but successfully concealed, purport, which it is my duty to extract, but which is within my power, if at all, only after the most inordinate expenditure of time.

month of February 1972 for a disability that began on July 8, 1971. Angela M. Williams was born on June 17, 1972, and was finally adopted by the wage earner on January 15, 1974.

She began living with the wage earner approximately one and a half to two weeks after birth, and she has no other relationship with the wage earner or his wife. She was, however, both born and adopted after her adoptive father became entitled to receive disability benefits.

IV

 Section 202(d)(8) of the Act, 42 U.S.C. 402(d)(8), bars the payment of benefits to a child adopted after a disabled wage earner became due benefits unless the child

(1) is the natural child or step-child of the wage earner or

(2) was legally adopted in an adoption decreed by a court of competent jurisdiction within the United States *and* was living with the disabled wage earner in the United States and receiving at least one-half support from the disabled wage earner for the year before the wage earner became entitled to benefits.

Since the plaintiff was adopted *after* the wage earner became entitled to disability insurance benefits, and she was neither living with nor supported by the wage earner in the year immediately before the time he became qualified for disability benefits, she is precluded by the statute from receiving benefits unless the statute is, as plaintiff alleges, unconstitutional.

The test of the constitutionality of a statutory classification within the Social Security Act is well-settled. The Supreme Court has recently reiterated it:

The standard for testing the validity of Congress' Social Security classification was clearly stated in *Flemming v. Nestor,* 363 U.S. 603, 611 [, 80 S.Ct. 1367, 4 L.Ed.2d 1435] (1960):

Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as Social Security, we must recognize that

the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in rational justification.

\* \* \* \* \* \*

The relation between the equal protection analysis of *Dandridge* and the Fifth Amendment due process analysis of *Flemming v. Nestor* and *Richardson v. Belcher* [, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231,] was described in the latter case in this language:

A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is 'rationally based and free from invidious discrimination.' *Dandridge v. Williams,* 397 U.S. 471, 487 [, 90 S.Ct. 1153, 25 L.Ed.2d 491]. While the present case, involving as it does a federal statute, does not directly implicate the Fourteenth Amendment Equal Protection Clause, a classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment. Cf. *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884.

These cases quite plainly lay down the governing principle for disposing of constitutional challenges to classifications in this type of social welfare legislation. *Weinberger v. Salfi,* 422 U.S. 749, 768–70, 95 S.Ct. 2457, 2468–69, 45 L.Ed.2d 522 (1975). Application of these standards to the instant action leads to the conclusion that Section 202(d)(8), as applied to the plaintiff, is constitutional.

This section was enacted as part of the 1972 amendments to the Act in what was euphemistically called an attempt to streamline then existing procedures and establish criteria regarding eligibility that would apply alike to retired and disabled workers. The Senate Finance Committee's report noted:

\* \* \* \* \* \*

[T]he committee believes that benefits for a child who is adopted by a worker already getting old-age or disability benefits should be paid only when the child lost a source of support because his parent retired or became disabled, and that the law should include safeguards against abuse through adoption of children solely to qualify them for benefits . . ..

S.R. 92–1230, 92d Cong. 2d Sess., 141 (1972); U.S.Code Cong. & Admin.News 1972, pp. 4989, 5039. This furnishes a rational basis for the challenged section.

The congressional concern with abuse of the Act by the adoption of children is long-standing. The 1939 amendments to the Social Security Act, which first made provision for the payment of a child's insurance benefit, precluded the child's eligibility (which is called "entitlement") if it was based upon an adoption made less than five years before the entitlement of the wage earner. H.R. 728, 76th Cong., 1st Sess., (1939); Act of August 10, 1939, ch. 666, Section 209(k), 53 Stat. 1377. While the degree of concern and the method of prevention of abuse have varied through the years, Section 202(d)(8) expresses the current legislative remedy for what it deemed to be a problem of potential abuse.

In *Weinberger v. Salfi,* 1975, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522, the Supreme Court considered a constitutional challenge to Sections 216(c)(5) and (e)(2), 42 U.S.C. 416(c)(5) and (e)(2), which condition eligibility for mother's and child's insurance benefits upon the existence of a marriage to a deceased wage earner of at least nine months duration. Reversing the lower court's decision, the Supreme Court noted:

. . . the Secretary principally defends the duration-of-relationship requirement not as a reasonable legislative decision to exclude a particular type of risk from coverage, but instead as a method of assuring that payments are made only upon the occurrence of events the risk of which is covered by the insurance program. Commercial insurance policies have traditionally relied upon fixed, prophylactic rules to protect against abuses which could expand liability beyond the risks which are within the general concept of its coverage. For example, the insurance policies often cover deaths by suicide, but not those suicides which were contemplated when the policy was purchased. Frequently the method chosen to contain liability within these conceptual bounds is a strict rule that deaths by suicide are covered if, and only if, they occur some fixed period of time after the policy is issued. See, e. g., 9G Couch, Cyclopedia of Insurance Law § 40.50 (2d ed. 1962). While such a limitation doubtless proves in particular cases to be "under-inclusive" or "over-inclusive," in light of its presumed purpose, it is nonetheless a widely accepted response to legitimate interests in administrative economy and certainty of coverage for those who meet its terms. When the Government chooses to follow this tradition in its own social insurance programs, it does not come up against a constitutional stone wall. Rather, it may rely on such rules so long as they comport with the standards of legislative reasonableness enunciated in cases like *Dandridge v. Williams* and *Richardson v. Belcher.*

Under those standards, the question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions, and would be directly contrary to our holding in *Mourning* [*v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318,] supra. Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than non-members. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence and that the expense and other

difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

422 U.S. 776–77, 95 S.Ct. 2472.

Like the duration of marriage requirement validated in *Salfi,* the prophylactic approach of Section 202(d)(8) passes constitutional muster.

While it may be urged that a narrower, more individualized remedy would be appropriate, the Supreme Court's comments in *Salfi* are instructive.

> While it is possible to debate the wisdom of excluding legitimate claimants in order to discourage sham relationships, and of relying on a rule which may not exclude some obviously sham arrangements, we think it clear that Congress could rationally choose to adopt such a course. Large numbers of people are eligible for these programs and are potentially subject to inquiry as to the validity of their relationships to wage earners.

> \* \* \* \* \* \*

> Not only does the prophylactic approach thus obviate the necessity for large numbers of individualized determinations, but it also protects large numbers of claimants who satisfy the rule from the uncertainties and delays of administrative inquiry into the circumstances of their marriages. Nor is it at all clear that individual determinations could effectively filter out sham arrangements, since neither marital intent, life expectancy, nor knowledge of terminal illness has been shown by appellees to be reliably determinable. Finally, the very possibility of prevailing at a hearing could reasonably be expected to encourage sham relationships.

> The administrative difficulties of individual eligibility determinations are without doubt matters which Congress may consider when determining whether to rely on rules which sweep more broadly than the evils with which they seek to deal. In this sense, the duration-of-relationship requirement represents not merely a substantive policy determination that benefits should be awarded only on the basis of genuine marital relationships, but also a substantive policy determination that limited resources is an expression of Congress' policy choice that the Social Security system, and its millions of beneficiaries, would be best served by a prophylactic rule which bars claims arising from the bulk of sham marriages which are actually entered, which discourages such marriages from ever taking place, and which is also objective and easily administered.

> The Constitution does not preclude such policy choices as a price for conducting programs for the distribution of social insurance benefits. Cf. *Geduldig v. Aiello,* 417 U.S. [484], at 496, 94 S.Ct. 2485, 41 L.Ed.2d 256; *Weinberger v. Salfi,* supra at 781–785, 95 S.Ct. 2475–2476.

Similar considerations are applicable here. The administrative difficulties and uncertainties created by individualized determinations are no less. Nor can it be urged that the efficacy of an individualized determination would be greater in this context for intent is a difficult matter to prove.

■ The attempt to attack the statute as creating an irrebuttable presumption is merely another way of challenging the classification. Every pattern of classification necessarily creates a distinction between those in different groups. Nor can it be said that this is a "suspect" classification. Compare *Weber v. Aetna Casualty and Surety Company,* 1972, 406 U.S. 164, [92 S.Ct. 1400, 31 L.Ed.2d 768,] which held invalid a statute barring legal disability on illegitimacy: "[T]he classification is justified by no legitimate state interest, compelling or otherwise." Whether a person's status is a fact of her personal history over which she had no control is one factor to be considered in determining whether a classification that takes that status into account is suspect. But it is not per se determinative. The status of being adopted has not historically been a focus of discrimination; it causes no enduring social stigma, it has never limited access to the electoral process. Hence, different treatment of adopted children and natural children does not mean

that adopted children are placed in a suspect class.

The present statute does not punish the plaintiff for her status, Cf. *Heiner v. Donnan,* 1932, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772; *Scales v. United States,* 1961, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782. It does not expose her to social oppression because she is adopted. She is not deprived of anything merely because she is adopted, for adopted children are eligible for benefits. The statute does draw a distinction between those adopted children who are eligible for benefits and those who are not.

Accordingly the defendant's motion for summary judgment is GRANTED.