Henryetta Courtney JOHNSON, a minor, by and through her Father and Next Friend, Theodore Courtney, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare of the United States, Defendant.

No. 78–1064.

United States District Court, D. Kansas.

Nov. 14, 1978.

Bion J. Beebe, Legal Aid Society of Wichita, Ins., Wichita, Kan., for plaintiff.

Jon K. Sargent, Asst. U. S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, District Judge.

This is an action in which the plaintiff seeks a judgment that certain provisions of the Social Security Act and accompanying regulations, 42 U.S.C. § 402(d)(8) and 20 C.F.R. § 404.323(a)(4), are unconstitutional and void. The matter is before the Court on cross motions for summary judgment. For reasons stated herein, the Court grants defendant's motion for summary judgment, and denies that of plaintiff.

Plaintiff's adoptive father, Theodore Courtney, became entitled to old-age insurance benefits, as provided in section 402(a) of the Social Security Act, based on an application filed in May 1970. On February 26, 1976, Theodore Courtney filed an application for child's insurance benefits, as provided in section 402(d), on behalf of his adopted daughter, Henryetta Courtney Johnson (Tr. 52–55), and on that same date he filed a Certificate of Applicant for Benefits on Behalf of Another (Tr. 62–65). The application was denied by the Social Security Administration after consideration and reconsideration (Tr. 56, 58–60) for the reason that Henryetta did not meet the definition of grandchild and did not meet the dependency requirements of the Social Security Act. Therefore, she was not entitled to child's insurance benefits on Mr. Courtney's earning record.

On August 31, 1977, at plaintiff's request, a hearing was held before an Administrative Law Judge [ALJ], at which plaintiff appeared and testified. Plaintiff was represented by a paralegal from the Legal Aid Society. On August 31, 1977, the ALJ made a determination unfavorable to plaintiff. He found that Henryetta is not entitled to child's insurance benefits on Mr. Courtney's account, on the basis that she was born after Courtney's entitlement to old-age insurance benefits and cannot qualify as a grandchild. (Tr. 12). On December 3, 1977, the Appeals Council of the Social Security Administration affirmed the determination of the ALJ. (Tr. 3). Thus, the determination of the ALJ stands as the final decision of the Secretary, and is reviewable by this Court under 42 U.S.C. § 405(g).

The applicable statutory provisions are not in dispute.

42 U.S.C. § 402(d) provides in pertinent part:

(1) Every child . . . of an individual entitled to old-age or disability insurance benefits . . ., if such child—

\* \* \* \* \* \*

(C) was dependent upon such individual—

(i) if such individual is living, at the time such application was filed,

\* \* \* \* \* \*

(iii) if such individual had a period of disability which continued until he became entitled to old-age or disability benefits, until the month of his death,

shall be entitled to a child's insurance benefit . . .

\* \* \* \* \* \*

(8) In the case of—

(A) an individual entitled to old-age insurance benefits (other than an individual referred to in subparagraph (B)), or

(B) an individual entitled to disability insurance benefits, or an individual entitled to old-age insurance benefits who was entitled to disability insurance benefits for the month preceding the first month for which he was entitled to old-age insurance benefits,

a child of such individual adopted after such individual became entitled to such old-age or disability benefits shall be deemed not to meet the requirements of clause (i) or (iii) of paragraph (1)(C) unless such child—

(C) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or

(D)(i) was legally adopted by such individual in an adoption decreed by a court of competent jurisdiction within the United States,

(ii) was living with such individual in the United States and receiving at least one-half of his support from such individual . . . (III) if he is an individual referred to in either subparagraph (A) or subparagraph (B) and the child is the grandchild of such individual or his or her spouse, for the year immediately before the month in which such child files his or her application for child's insurance benefits, and

(iii) had not attained the age of 18 before he began living with such individual.

In the case of a child who was born in the one-year period during which such child must have been living with and receiving at least one-half of his support from such individual, such child shall be deemed to meet such requirements for such period if, as of the close of such period, such child has lived with such individual in the United States and received at least one-half of his support from such individual for substantially all of the period which begins on the date of birth of such child.

The Regulation, § 404.323(a), provides in pertinent part:

(4) If the child of an insured individual was adopted after the insured individual became entitled to old-age or disability insurance benefits, the dependency of such child may not be established at the times specified in subparagraph (1) [time application filed] or (3) [time of entitlement] of this paragraph unless such child:

(i) Is the natural child or stepchild of such insured individual (including a natural child or stepchild who was legally adopted by such insured individual), or

(ii)(A) Was legally adopted by such insured individual in an adoption decreed by a court of competent jurisdiction within the United States, and

(B) Had not attained the age of 18 before he began living with such insured individual; and

(C) Was living with such insured individual in the United States and receiving at least one-half of his support from such insured individual:

\* \* \* \* \* \*

(3) Effective for months after July 1973 based on an application filed on or after July 1973, for the year immediately before the month in which the child's application is filed if the child is the grandchild (as defined in § 404.1109(c) but not including a stepgrandchild) of the individual upon whose wages and self-employment income his application is based or the grandchild (as defined in § 404.1109(c)) of the individual's spouse.

20 C.F.R. § 404.1109(c) does not define a grandchild to include a great-grandchild.

As Judge Alvin B. Rubin noted in *Williams v. Mathews*, 441 F.Supp. 1045, 1046 (E.D.La.1977), the words of the statute and regulation do not "dance in meaningless procession; indeed they do not dance at all. They are leaden and lifeless, scarcely skin of living thought, but they do yield a meaning of a fashion."

The meaning of the statute for Henryetta is that to be entitled to child's insurance benefits on the account of Theodore Courtney, since she was born after he became entitled to old-age benefits and since she is not a child or step child, she must:

1) Be legally adopted,

2) Be the grandchild of Theodore Courtney,

3) Have been living with Courtney and receiving at least one-half of her support from him for the year immediately prior to her application for benefits, and

4) Have been under eighteen before she began living with such individual.

The facts as adduced at the hearing before the ALJ and as outlined in the parties' briefs are not in dispute.

Theodore Courtney, born in 1905, became entitled to old-age insurance benefits in 1970. Henryetta Courtney Johnson was born January 1, 1975. She is the natural daughter of Jimmy L. Johnson and Linda Tucker, who have never been married. Mr. Courtney considers Henryetta to be his great-grandchild. He has never been married. At some time in the past, it was alleged but never proven that he was the father of a son; that child was the father of Jimmy L. Johnson, who fathered Henryetta. On February 24, 1976, the Probate Court of Sedgwick County, Kansas, decreed the adoption of Henryetta Johnson, then one year old, by Theodore Courtney. (Tr. 66–67). Mr. Courtney was to have joint custody and control of Henryetta along with her natural mother, Linda Tucker.

The testimony of Mr. Courtney at the hearing before the ALJ was that he paid the expenses of Henryetta from the time of her birth. (Tr. 27). Linda Tucker, with Henryetta, moved in with Mr. Courtney on April 1, 1975, after her welfare benefits had been cut off. (Tr. 27, 84). They lived with him from April 1, 1975, until January or February 1976. (Tr. 42). Mr. Courtney assisted Linda Tucker in regaining welfare benefits, and she and Henryetta moved out. Mr. Courtney indicated that they moved back in with him for a month or two during the summer of 1976 because Linda Tucker's welfare benefits had again been temporarily cut off. (Tr. 30, 48). Henryetta was not living with Mr. Courtney at the time of the hearing, but he stated that he visits his adopted daughter every day and continues to buy food and other things for her. (Tr. 31). According to Mr. Courtney, Henryetta

is drawing Veterans Administration benefits on his account. (Tr. 36–38). The file also contains a copy of an insurance contract issued January 4, 1977, on Mr. Courtney's life, naming Henryetta Johnson as the beneficiary. (Tr. 70–71).

One of the requirements under the statute is that Henryetta had been living with Mr. Courtney and receiving at least one-half of her support from him in the year before her application for benefits, i. e., from her birth in January 1975 until her application in February 1976. The testimony of Mr. Courtney is that although he may have provided one-half of Henryetta's support in that time, Henryetta did not live with him during the entire year, but only from April until some time after the first of the year. It was the statement of Linda Tucker that she and Henryetta lived with Mr. Courtney until January 1, 1976. (Tr. 84). It appears to the Court, then, that Henryetta is ineligible for child's insurance benefits for failure to live with Mr. Courtney in the appropriate time period. However, the ALJ did not make a specific finding as to this requirement, although he did find that:

6. She does not meet the dependency requirements at a time specified in the Social Security Act or Regulations. (Tr. 13).

On the contrary, the ALJ's determination was based on the fact that Henryetta was not a grandchild of Mr. Courtney. It is the requirement that a child in this position be a grandchild that is challenged in plaintiff's petition. We are therefore compelled to direct our enquiry to the grandchild requirement. Because we affirm the Secretary's decision on this basis, there is no need for a further investigation into whether Henryetta met the other requirements.

There is substantial evidence to support the Secretary's decision that Henryetta does not meet the grandchild requirement. It was Mr. Courtney's testimony that Henryetta was not his granddaughter. The ALJ found that she was not a grandchild or great-grandchild of Mr. Courtney. Mr. Courtney considered her to be his great-

grandchild. We need not determine whether or not Henryetta is his great-grandchild as the evidence is undisputed that she is not his grandchild, which she must be to be eligible for benefits.

■ Plaintiff urges, however, that the statute and regulation are unconstitutional, that equal protection and due process are denied because the provisions discriminate against some adopted children as compared to others, create two classes of adopted children which are treated differently without any rational basis for doing so, and impose more stringent requirements on adopted children than on natural children without rational basis for doing so. Plaintiff directs the Court's attention to *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), where the Supreme Court held that a statutory scheme denying child's insurance benefits to certain illegitimate children, but not to others, violated the equal protection of the law guaranteed by the due process provisions of the Fifth Amendment. The Court looked to the purposes of the scheme to provide support for dependents of a disabled wage earner and to prevent spurious claims. The effect of the scheme was to conclusively bar benefits to certain illegitimate children born after the onset of disability. The Supreme Court held that this classification did not serve either purpose of the statute, for it denied benefits to some dependent children, and the complete statutory bar to disability benefits was not reasonably related to the valid governmental purpose of preventing spurious claims.

Defendant urges that the Court should direct its attention to whether the provisions here are rationally based and free from invidious discrimination. Defendant argues that *Jimenez* is inapplicable. First, defendant points out, adoption does not have the historical stigma and discrimination of illegitimacy. Second, the provisions preclude benefits to certain adopted children not because of the probability that they are not dependent on their adoptive parent, but to discourage adoptions undertaken solely for the purpose of qualifying the children for benefits, asserts defendant. Defendant points to *Williams v. Mathews*, 441 F.Supp. 1045 (E.D.La.1977), *aff'd. Williams v. Califano*, 566 F.2d 1044, *cert. den.* —— U.S. ——, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978), where a similar challenge to the same statute was rejected.

The most recent statement of the basic standard of review is found in *Mathews v. De Castro*, 429 U.S. 181, 50 L.Ed.2d 389, 97 S.Ct. 431 (1976). The Supreme Court stated:

The basic principle that must govern an assessment of any constitutional challenge to a law providing for governmental payments of monetary benefits is well established. Governmental decisions to spend money to improve the general public welfare in one way and not another are "not confided to the courts. The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Helvering v. Davis*, 301 U.S. 619, 640, 57 S.Ct. 904, 109 ALR 1319, 81 L.Ed. 1307. In enacting legislation of this kind a government does not deny equal protection "merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491.

To be sure, the standard by which legislation such as this must be judged "is not a toothless one," *Mathews v. Lucas*, 427 U.S. 495, 510, 96 S.Ct. 2755, 49 L.Ed.2d 651. But the challenged statute is entitled to a strong presumption of constitutionality. "So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285. . . . 429 U.S. 185, 97 S.Ct. 334. 50 L.Ed.2d 393–394.

In *Mathews v. De Castro*, the Supreme Court upheld a statute which made a distinction between married and divorced women whose husbands retired or became disabled. Likewise, in *Mathews v. Lucas, supra,* the Court upheld a statute which denied survivorship benefits to illegitimate children who did or were not living with their parents or who failed to show dependency or who did not meet the statutory presumptions of dependency; *Jimenez* was not controlling since the statute in *Lucas* did not conclusively deny benefits on the basis of a presumption about dependency. Also, in *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court upheld a statute setting a limit on widows' and children's entitlement to benefits on behalf of a deceased wage earner. All statutes were within the Social Security Act, and all met the standards of legislative reasonableness so as to be constitutional.

With these decisions in mind, this Court is persuaded by the analysis of the provisions at issue here in *Williams v. Mathews, supra.* We note particularly the Supreme Court's recent denial of certiorari in that case, in October 1978, indicating that the Court did not disagree with the constitutional analysis of Judge Rubin.

*Williams* dealt with a constitutional challenge to 42 U.S.C. § 402(d)(8). The plaintiff in that action, like Henryetta here, would not be entitled to benefits under the statute unless it was found to be unconstitutional. The court set out the standard for analyzing the statute, that it must be rationally based and free from invidious discrimination. The court found a rational basis for the statute in congressional history, pointing to the Senate Finance Committee's report which noted:

\* \* \* \* \* \*

[T]he committee believes that benefits for a child who is adopted by a worker already getting old-age or disability benefits should be paid only when the child lost a source of support because his parent retired or became disabled, and that the law should include safeguards against abuse through adoption of children solely to qualify them for benefits . . . . S.R. 92–1230, 92d Cong. 2d Sess., 141 (1972); U.S.Code Cong. & Admin.News 1972, pp. 4989, 5039.

The court noted, 441 F.Supp. at 1048:

The congressional concern with abuse of the Act by the adoption of children is longstanding. . . . While the degree of concern and the method of prevention of abuse have varied through the years, Section 202(d)(8) expresses the current legislative remedy for what it deemed to be a problem of potential abuse.

The court then held that the classifications of 42 U.S.C. § 402(d)(8) to achieve this purpose passed constitutional muster. The court noted that the administrative difficulties and uncertainties which would be created by individualized determinations rather than the statute's prophylactic classifications would be similar to those noted by the Supreme Court on *Weinberger v. Salfi, supra.* In *Salfi*, the Supreme Court stated that prophylactic rules are permissible so long as they comport with the standards of legislative reasonableness noted above. 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522. The Court stated that:

Under those standards, the question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. . . . Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than nonmembers. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule. . . . 45 L.Ed.2d at 545–546, 422 U.S. at 777, 95 S.Ct. at 2472.

After holding that § 402(d)(8) passed constitutional muster under the reasonableness standards, Judge Rubin noted that the clas-

sification of adopted children was not a "suspect" classification requiring a more strict scrutiny. "The status of being adopted has not historically been a focus of discrimination; it causes no enduring social stigma, it has never limited access to the electoral process. Hence, different treatment of adopted children and natural children does not mean that adopted children are placed in a suspect class." 441 F.Supp. at 1049–1050.

This Court agrees with *Williams*. Although the prophylactic rule in § 402(d)(8) may exclude adopted children who are dependent on a retired or disabled wage earner and who were not adopted solely to be qualified for benefits, this exclusion does not invalidate the statute. The Congressional concern to prevent abuses is reasonable, and this concern is reasonably achieved by a requirement that says that certain children adopted after the wage-earner becomes qualified for benefits must be natural, step-, or grandchildren. Since Henryetta does not fit into any of these categories, her petition cannot be granted.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be, and it is hereby, Denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be, and it is hereby, Sustained.