656 F.2d 569
 Henryetta Courtney JOHNSON, a Minor, by and through her
Father and Next Friend, Theodore Courtney,
Plaintiff-Appellant
v.
Joseph A. CALIFANO, Jr., Secretary of Health, Education and
Welfare of the United States, Defendant-Appellee.
 No. 79-1138.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 3, 1981.
 
 Bion J. Beebe, Legal Services of Southcentral Kansas, El Dorado, Kan., for plaintiff-appellant.
 Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., James P. Buchele, U. S. Atty., Topeka, Kan., Randolph W. Gaines, Chief of Litigation, Baltimore, Md., Stanley Ericsson, Dept. of Health, Education, and Welfare, for defendant-appellee.
 Before HOLLOWAY, BARRETT, and DOYLE, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This is an appeal from a summary judgment of the district court, upholding the decision of the Secretary that plaintiff Henryetta Courtney Johnson was not entitled to child's insurance benefits on her adoptive father's account under the old-age insurance benefits provisions of the Social Security Act (the Act). 462 F.Supp. 656.
 
 
 2
 * Henryetta's adoptive father, Theodore Courtney, became entitled to old-age insurance benefits in 1970. Henryetta was born January 1, 1975, to Jimmy L. Johnson and Linda Tucker, who have never been married. Mr. Courtney was alleged to be the father of Jimmy Johnson's father. On February 24, 1976, Henryetta was legally adopted by Mr. Courtney.
 
 
 3
 Thereafter on February 26, 1976, he filed an application for child's insurance benefits, as provided for in 42 U.S.C. § 402(d), on behalf of Henryetta.[1] Since Henryetta was born after Mr. Courtney became entitled to old-age benefits, and since she is not a child or step-child of Mr. Courtney, the statute required that Henryetta be legally adopted by Mr. Courtney, that she be his grandchild, that she must have been living with Courtney and receiving at least one-half of her support from him for the year immediately prior to her application for benefits and that she must have been under eighteen before she began living with Courtney. The application was denied on consideration and reconsideration by the Social Security Administration on the grounds that Henryetta did not meet the definition of grandchild under the Act nor did she meet the dependency requirements of the Act.
 
 
 4
 Mr. Courtney then requested and received a hearing before an Administrative Law Judge (ALJ) who found that Henryetta was neither a grandchild nor a great-grandchild of Mr. Courtney, that she did not meet the dependency requirements at a time specified in the Social Security Act or Regulations, and that she therefore did not meet the eligibility requirements for entitlement to child's insurance benefits. The Appeals Council upheld the decision of the ALJ, making this decision the final decision of the Secretary.
 
 
 5
 Mr. Courtney then sought review in the district court pursuant to 42 U.S.C. § 405(g). On motions by both parties for summary judgment, the court granted the Secretary's motion on the basis that Henryetta is not Courtney's grandchild, thus finding it unnecessary to determine whether or not Henryetta is his great-grandchild or whether any of the other requirements of the Act were met. The court also rejected Courtney's contention that the statute and implementing regulation, 20 CFR § 404.323(a),[2] violate due process and equal protection principles embodied in the Fifth Amendment Due Process Clause. This appeal followed. On appeal, Courtney again raises his constitutional claims to which we now turn.[3]II
 
 
 6
 Courtney first argues that the Act encompasses two levels of discrimination and two separate violations of the equal protection component of the Fifth Amendment Due Process Clause. He says that the first level of discrimination is that children who are adopted after the wage earner becomes entitled to benefits are treated differently than natural children who are born after the wage earner becomes entitled to benefits. The second level of discrimination is that children who are adopted after the wage earner becomes entitled to benefits are eligible for children's benefits only if they are natural children, stepchildren or grandchildren of the wage earner. Courtney says that there is no rational basis for either level of discrimination and thus the statute denies equal protection.
 
 
 7
 According to Courtney, the two main aims of this portion of the Act are to assure that benefits are available to children who lose an actual source of support because their parents have become disabled or retired, and to provide safeguards against abuse through the adoption of children solely to qualify them for social security benefits. Courtney says that the first rationale encompasses not only children who lose a source of support but also children who were not receiving support which they might otherwise expect from a disabled or aged parent, i. e., a child in Henryetta's position, citing Jimenez v. Weinberger, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363.
 
 
 8
 Courtney also says that the second rationale, the prevention of abuse, is not rationally related to the method used to accomplish this goal. He argues that there is no basis in common sense or experience to believe that someone would adopt a child merely to qualify the child for benefits under the Act. He reasons that because of the many financial duties and obligations of an adoptive parent, there is no reason for a person to expect to profit from adopting a child solely to qualify the child for benefits. Further, the possibility of adoptions for fraudulent reasons is lessened by the fact that judicial proceedings must take place in the adoption process. Courtney contends that limitations applied to all adopted children equally would be both constitutional and sufficient to eliminate fraudulent claims. Alternatively, Congress could allow excluded adopted children the opportunity to overcome what is now an irrebuttable presumption that they are not entitled to benefits and by so doing overcome the current constitutional infirmities in the Act.
 
 
 9
 Secondly, Courtney contends that the total exclusion of most children adopted after the wage earner becomes entitled to benefits violates the Due Process Clause of the Fifth Amendment. He says there is no nexus between the known fact of adoption after the onset of disability or old age and the presumed fact of fraudulent claims. Further, he says that the statute impermissibly eliminates the possibility of individualized determinations solely for the goal of efficiency, a goal which subverts the primary governmental interest expressed by the Act as a whole.
 
 
 10
 The Secretary responds that these provisions of the Act are an exercise of Congress' power to spend in aid of the general welfare, and that Congress is entitled to adopt prophylactic measures to deter potential abuse, even if it results in eliminating some applicants who are not motivated by the abuse the provision was intended to deter. Further, Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522, rejected claims of "under-inclusiveness" and "over-inclusiveness" with respect to similar provisions of the Act while making clear that individualized determinations need not be made in such cases. The Secretary also says that these provisions are rationally related to preventing abuse in that the few children adopted after the wage earner's eligibility who are allowed to claim benefits are in situations providing objective criteria such as familial ties from which motives other than abusive ones may readily be inferred.
 
 III
 
 11
 The district court noted that the standard of review is to determine whether the classification has some "reasonable basis", citing Mathews v. De Castro, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389. The court adopted the reasoning of Williams v. Mathews, 441 F.Supp. 1045 (E.D.La.), aff'd., Williams v. Califano, 566 F.2d 1044 (5th Cir.), cert. denied, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112, which held that the statute was rationally based and free from invidious discrimination. See Stanton v. Weinberger, 502 F.2d 315, 320 (10th Cir.) (upholding earlier provisions relating to adopted children). The district court here reasoned, 462 F.Supp. at 662:
 
 
 12
 Although the prophylactic rule in § 402(d)(8) may exclude adopted children who are dependent on a retired or disabled wage earner and who were not adopted solely to be qualified for benefits, this exclusion does not invalidate the statute. The Congressional concern to prevent abuses is reasonable, and this concern is reasonably achieved by a requirement that says that certain children adopted after the wage-earner becomes qualified for benefits must be natural, step-, or grandchildren. Since Henryetta does not fit into any of these categories, her petition cannot be granted.
 
 
 13
 Our most recent guide is United States Railroad Retirement Board v. Fritz, --- U.S. ----, 101 S.Ct. 453, 66 L.Ed.2d 368. There the Court held "that where social or economic regulations are involved Dandridge v. Williams, 397 U.S. 471 (90 S.Ct. 1153, 25 L.Ed.2d 491) (1970), and Jefferson v. Hackney, 406 U.S. 535 (92 S.Ct. 1724, 32 L.Ed.2d 285) (1972), together with this case, state the proper application of the test." Id. at ----, n.10, 101 S.Ct. at 460, n.10. Quotations from Dandridge and Jefferson in Fritz indicate the Court's approval of the rational-basis standard as the appropriate test. The Court also noted that it has "consistently refused to invalidate on equal protection grounds legislation which it simply deemed unwise or unartfully drawn." Id. Hence, "(i)f the classification has some 'reasonable basis', it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " Id., (quoting Dandridge, supra, 397 U.S. at 485-86, 90 S.Ct. at 1161-62).
 
 
 14
 Applying this standard to the statute in question, we must agree with the district court that the statute does not violate equal protection principles and accordingly does not deny due process.[4] This is a situation like that discussed in Weinberger v. Salfi, 422 U.S. 749, 777, 95 S.Ct. 2457, 2472, 45 L.Ed.2d 522, in which "Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded both that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule." We believe that one of the concerns of Congress was with the possibility of abuse of the Act through adoption, see Clayborne v. Califano, 603 F.2d 372, 378 (2d Cir.), Williams v. Mathews, supra 441 F.Supp. at 1047-48, and the Congressional history cited in these cases.[5] And further, we believe that the classification in issue is a rational one since Congress could rationally determine that the potential for abuse is greater in adoptions of unrelated children than when the adoption is one "cementing a blood or matrimonial relationship". Clayborne, supra, 603 F.2d at 378.[6]
 
 
 15
 We are impressed by Courtney's argument that because of the many obligations imposed on adoptive parents, it would be unlikely that most people would adopt solely to gain benefits under the Act, and consequently we agree that perhaps "in practice (the classification) results in some inequality." Dandridge, supra, 397 U.S. at 486, 90 S.Ct. at 1162. But, it is not for the courts to invalidate a statute simply because it is "unwise or unartfully drawn," Fritz, supra. We cannot say that despite the obligations of adoptive parents, the Congress could not rationally draw a line with concern for possible abuse by adoption after entitlement. Since we conclude that there was some reasonable basis for drawing the lines as Congress did, its judgment will not be overturned. See Clayborne, supra, 603 F.2d at 379.
 
 
 16
 Additionally, we are not persuaded by Courtney's argument based on the conclusive presumption doctrine. He contends that the classification would be constitutionally permissible only if the excluded adopted children were given the opportunity to overcome the presently irrebuttable presumption relating to fraudulent purposes, that the purported goal of efficiency relied on by the Government subverts the primary purpose expressed in the Act as a whole, and that there are higher values than speed and efficiency, citing Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551.
 
 
 17
 The Supreme Court has considered similar arguments and rejected them in the context of the Social Security Act. See Weinberger v. Salfi, supra 422 U.S. at 770-73, 95 S.Ct. at 2469-70. There the Court stressed the distinction between the circumstances in the earlier conclusive presumption cases and cases like Salfi involving legislative judgments made on social welfare programs. Id. at 767-773, 95 S.Ct. at 2467-2470. The Court observed that the Social Security Act did not purport to speak in terms of the bona fides of the parties to a marriage, but then make plainly relevant evidence of such bona fides inadmissible. Id. at 772, 95 S.Ct. at 2470; see also Mogle v. Sevier County School District, 540 F.2d 478, 484-85 (10th Cir.), cert. denied, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 572; Younger v. Colorado State Board of Law Examiners, 625 F.2d 372, 378 (10th Cir.). These considerations seem to apply here. The benefits are simply made "available upon compliance with an objective criterion, one which the Legislature considered to bear a sufficiently close nexus with underlying policy objectives to be used as the test for eligibility." Salfi, supra, 422 U.S. at 772, 95 S.Ct. at 2470. We must agree that here too "the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule." Id. at 777, 95 S.Ct. at 2472, see Clayborne, supra, 603 F.2d at 380; Williams, supra, 441 F.Supp. at 1049.
 
 
 18
 In sum, we agree with the district court that Mr. Courtney's adoptive child does not meet valid requirements of the Act and that the Act does not violate due process or equal protection principles embodied in the Fifth Amendment Due Process Clause. Accordingly the judgment is
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 42 U.S.C. § 402(d) provides in pertinent part:
 (1) Every child ... of an individual entitled to old-age or disability insurance benefits ..., if such child
 (c) was dependent upon such individual
 (i) if such individual is living, at the time such application was filed,
 (III) if such individual had a period of disability which continued until he became entitled to old-age or disability benefits, until the month of his death.
 shall be entitled to a child's insurance benefit ...
 (8) In the case of
 (A) an individual entitled to old-age insurance benefits (other than an individual referred to in subparagraph (B)), or
 (B) an individual entitled to disability insurance benefits, or an individual entitled to old-age insurance benefits who was entitled to disability insurance benefits for the month preceding the first month for which he was entitled to old-age insurance benefits,
 a child of such individual adopted after such individual became entitled to such old-age or disability benefits shall be deemed not to meet the requirements of clause (i) or (iii) of paragraph (1)(C) unless such child
 (C) is the natural child or stepchild of such individual (including such a child who was legally adopted by such individual), or
 (D)(i) was legally adopted by such individual in an adoption decreed by a court of competent jurisdiction within the United States,
 (ii) was living with such individual in the United States and receiving at least one-half of his support from such individual ... (III) if he is an individual referred to in either subparagraph (A) or subparagraph (B) and the child is the grandchild of such individual or his or her spouse, for the year immediately before the month in which such child files his or her application for child's insurance benefits, and
 (iii) had not attained the age of 18 before he began living with such individual.
 In the case of a child who was born in the one-year period during which such child must have been living with and receiving at least one-half of his support from such individual, such child shall be deemed to meet such requirements for such period if, as of the close of such period, such child has lived with such individual in the United States and received at least one-half of his support from such individual for substantially all of the period which begins on the date of birth of such child.
 
 
 [2]
 This regulation provides in pertinent part:
 (4) If the child of an insured individual was adopted after the insured individual became entitled to old-age or disability insurance benefits, the dependency of such child may not be established at the times specified in subparagraph (1) (time application filed) or (3) (time of entitlement) of this paragraph unless such child:
 (i) Is the natural child or stepchild of such insured individual (including a natural child or stepchild who was legally adopted by such insured individual), or
 (ii)(A) Was legally adopted by such insured individual in an adoption decreed by a court of competent jurisdiction within the United States, and
 (B) Had not attained the age of 18 before he began living with such insured individual; and
 (C) Was living with such insured individual in the United States and receiving at least one-half of his support from such insured individual:
 (3) Effective for months after July 1973 based on an application filed on or after July 1973, for the year immediately before the month in which the child's application is filed if the child is the grandchild (as defined in § 404.1109(c) but not including a stepgrandchild) of the individual upon whose wages and self-employment income his application is based or the grandchild (as defined in § 404.1109(c) of the individual's spouse.
 
 
 [3]
 Courtney does not argue on appeal that the district court erred in accepting the Secretary's finding that Henryetta was not his grandchild. Were this the only basis upon which the ALJ determined that Henryetta was ineligible for benefits, there might be another substantial issue raised inasmuch as at least one court has held that a great-grandchild comes within the definition of grandchild as used within the Act. See Mustachio v. Califano, 486 F.Supp. 222 (D.N.J.)
 However, the ALJ specifically found that Henryetta was neither the grandchild nor the great-grandchild of Courtney. (II R.12) And, even though the district court thought it unnecessary to address the correctness of the finding that Henryetta was not Courtney's great-grandchild, we note that there was substantial evidence in the record to support this factual finding of the ALJ. Mr. Courtney's brief lends credence to this finding, conceding that "Mr. Courtney had always considered Henryetta to be his great-grandchild, but this fact was not established at the administrative hearing." (Brief of Johnson, 1). Hence, we feel it unnecessary to address the legal issue of whether a great-grandchild comes within the statutory definition of grandchild.
 
 
 [4]
 As the Court said in Fritz, supra at ----, n.8, 101 S.Ct. at 458, n.8:
 Although 'the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process." ' Schneider v. Rusk, 377 U.S. 163, 168 (84 S.Ct. 1187, 1190, 12 L.Ed.2d 218) (1964). Thus, if a federal statute is valid under the Equal Protection Clause, it is perforce valid under the Due Process Clause. Richardson v. Belcher, 404 U.S. 78, 81 (92 S.Ct. 254, 257, 30 L.Ed.2d 231) (1971).
 Cf. Mathews v. De Castro, 429 U.S. 181, 182 n.1, 97 S.Ct. 431, 432 n.1, 50 L.Ed.2d 389 ("the Fifth Amendment's Due Process Clause encompasses equal protection principles.").
 
 
 [5]
 We focus on the rationale that the validity of the Act is sustained by the possibility of abuse by adoptions after entitlement and do not reach the "loss of support" point, discussed earlier
 
 
 [6]
 Tenny v. United States, 441 F.Supp. 224 (E.D.Mo.), is relied on by Courtney. It dealt with the Civil Service Retirement Act provisions having the "lived with" requirement which was deemed to bar payments to illegitimate children who did not live with the deceased federal employee at his death. On reasoning similar to that in Jimenez the provision was held invalid as an irrational classification turning on legitimacy, a limitation not furthering the purpose of aiding dependent children and not rationally avoiding the risk of spurious claims which was held to be the same for resident or nonresident illegitimates
 We feel that Congress could rationally decide that the abuse problem related to adoptions made after entitlement required the exclusion imposed, even if the treatment of the illegitimates in Tenny was properly held invalid. And for similar reasons we believe the instant case is distinguishable from Jimenez which dealt with illegitimates. See Clayborne, supra, 603 F.2d at 378-79.