**Shirley COOK for Cynthia COOK
SSN: 227–10–8688, Plaintiff,**

v.

**Donna E. SHALALA Secretary of Health
and Human Services, Defendant.**

**Civ. A. No. 92–0122–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Oct. 22, 1993.

---

Joseph E. Wolfe, Wolfe & Farmer, Norton, VA, for plaintiff.

Richard Lloret, Asst. U.S. Atty., Roanoke, VA, for defendant.

## MEMORANDUM OPINION

KINSER, United States Magistrate Judge.

Plaintiff, Shirley Cook, filed this action on behalf of Cynthia Cook, seeking judicial review of the final decision of the Secretary of Health and Human Services ("Secretary"), denying entitlement to child's insurance benefits under Title II of the Social Security Act, ("the Act"), as amended, 42 U.S.C. § 402(d) (1989), prior to January 1990. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) (1990).[1] This case is before the undersigned United States Magistrate Judge under the authority of 28 U.S.C. § 636(c)(2) (1990).

In an opinion which now stands as the final decision of the Secretary, an Administrative Law Judge ("ALJ") denied child's insurance benefits prior to January 1990 because the wage earner, Howard Cook, adopted Cynthia Cook after his entitlement to retirement benefits under the Act. At the time of his entitlement, he was not living with nor contributing to Cynthia Cook's support. In a

---

1. The Secretary contends that, to the extent which plaintiff challenges the denial of a 1979 application for benefits, the court is without jurisdiction to hear it because there was no "final decision" on that application. However, the ALJ's decision, from which plaintiff now appeals, dealt directly with the period before January 1990. In fact, the ALJ specifically held that "the claimant is not entitled to child's insurance benefits, prior to January, 1990...." (R. at 12). This case is, therefore, properly before this court and does not involve plaintiff's 1979 application.

letter dated February 21, 1990, the Social Security Administration awarded child's insurance benefits beginning in January 1990 under the current version of 42 U.S.C. § 402(d)(8)(D) (1991). Benefits were denied prior to January 1990, and it is that denial which Shirley Cook on behalf of Cynthia Cook now challenges.

■ This review focuses on whether substantial evidence supports the Secretary's final decision. Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Secretary must be affirmed. *Laws*, 368 F.2d at 642.

## I.

Howard Cook, the wage earner and great-grandfather[2] of Cynthia Cook, began receiving retirement benefits under the Act on or about December 1, 1971. Cynthia Cook was born on July 7, 1975, and began living with Howard and his wife, Shirley Cook, in May 1978. The Cooks formally adopted Cynthia on February 2, 1979, pursuant to a valid adoption decree entered by state court. (R. at 10).

On January 9, 1990, Shirley Cook filed for secondary insurance benefits on behalf of Cynthia Cook on the record of Howard Cook. (R. at 10). The Secretary awarded Cynthia Cook benefits for the periods beginning January 1, 1990, but denied benefits for the prior periods because Cynthia was not living with and receiving one-half of her support from Howard Cook during the year before he be-

came entitled to retirement benefits in December 1971. (R. at 22).

■ The Act provides benefits to wage-earners who have retired or have become disabled, and "secondary" benefits for those members of the wage-earner's family who are "dependent" on the wage-earner. *See* 42 U.S.C. § 402(d) (1991). Prior to January 1, 1990, one had either to be a natural child of the wage-earner, or, as an adopted child, satisfy certain rigid support requirements,[3] to be "dependent" within the meaning of the Act. Otherwise, that adopted child was not entitled to receive secondary benefits. "In short, the statute extend[ed] secondary coverage to all adopted children directly related by blood or marriage to the insured but deni[ed] benefits to other adopted children, i.e., unrelated children, unless they were dependent on the insured prior to the onset of the disability." *Clayborne v. Califano*, 603 F.2d 372, 376 (2d Cir.1979).

■ Obviously, under the plain language of the Act's prior version, Cynthia Cook was not entitled to secondary benefits because the support requirements were not satisfied. This is clear because Howard Cook became eligible for benefits in December 1971, but did not begin supporting Cynthia until seven years later. Thus, the support provisions, which really were the sine qua non to receiving benefits under the Act for those similarly situated as Cynthia, were simply not met.

The Act, however, was amended in 1989 to provide secondary benefits for children like Cynthia, who were adopted after the wage-earner became entitled to receive retirement benefits, but were not living with nor being supported by the wage-earner when he became eligible for such benefits. To provide for this class of children, Congress had to remove the support requirements previously in place. Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239 § 10,301, 103 Stat. 2106 (1989). Thus, under the plain

---

2. From the record, it is not clear whether Howard Cook is the great-grandfather or uncle of Cynthia Cook; however, this inconsistency does not affect the court's decision.

3. Under the prior Act, adopted children, who were unrelated by blood to their adopting parents, had to satisfy the support requirements

before the wage-earner became eligible to receive benefits under the Act. The Act's support provisions required that such children live with the wage-earner and receive one-half of their support from the wage-earner. 42 U.S.C. § 402(d)(8) (prior version).

language of the Act's current version, Cynthia is entitled to receive secondary benefits, and the Secretary properly awarded them for the period after January 1990.

The question now is not whether Cynthia Cook is entitled to benefits under the plain language of the prior and current versions of the Act, but whether this court should apply the Act's 1989 amendment retroactively and whether the Act's prior version, which distinguished between adopted and natural children, was unconstitutional. Shirley Cook argues that it is "discrimination by the Social Security Administration that both adoptive parents and adopted children be penalized due to the inadequacy of the Social Security Act prior to December 19, 1989." (Plaintiff's Brief at 5). She contends that distinguishing between adopted children and natural children violates her constitutional rights.[4] The court finds these contentions without merit and, therefore, grants the Secretary's motion for summary judgment.

## II.

■ Cook's first contention is not supported by the language of the amendment. The plain, unambiguous language of Pub.L. No. 101–239 § 10,301(c) prevents any retroactive application of the Act's provisions. The amendment specifically states that it is effective "with respect to benefits payable for months after December 1989, but only on the basis of applications filed on or after January 1, 1990." Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239 § 10,301(c), 103 Stat. 2106 (1989). Congress could have made this amendment retroactive, but it did not. Furthermore, it is not the role of this court, nor of any court for that matter, to

read into unambiguous legislation policies that cannot be supported by either the language of the statute itself or congressional intent.

> When construing a statute ... explicit in scope, a court must act within certain well-defined constraints. If a legislative purpose is expressed in "plain and unambiguous language, ... the ... duty of the courts is to give it effect according to its terms."

*United States v. Rutherford,* 442 U.S. 544, 551, 99 S.Ct. 2470, 2474, 61 L.Ed.2d 68 (1979) (quoting *United States v. Lexington Mill & Elevator Co.,* 232 U.S. 399, 409, 34 S.Ct. 337, 340, 58 L.Ed. 658 (1914)).

■ Moreover, Congress was not outside its permissible sphere of action when it made the change to the Act prospective and not retroactive. Congress is not required to make every modification to the Social Security Act retroactive.[5] To hold otherwise would ignore the pragmatism that animates our legal system and the economic realities of the current age. Thus, plaintiff's argument is without merit.

## III.

■ Plaintiff argues next that the prior Act unconstitutionally distinguished between adopted and natural children, thus, entitling her to receive benefits for the periods prior to January 1990. This argument meets a similar fate as her first. In the context of Social Security, Congress may distinguish between adopted and natural children so long as such distinctions are either supported by a rational basis or do not "invidiously discriminate among ... claimants on the basis of a 'bare congressional desire to harm a political-

---

4. The court had difficulty in deciphering what it finally concluded to be plaintiff's "Argument" found in her brief. No cases were cited by plaintiff in making her legal arguments.

5. Courts have vigorously debated whether congressional enactments should be applied prospectively or retroactively. This debate has been fueled by two Supreme Court pronouncements. *Compare Bradley v. Richmond School Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("a court [should] appl[y] the law in effect at the time it renders its decision") *with Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988)

("congressional enactments and administrative rules [should] ... not be construed to have retroactive effect unless their language requires this result"). This court need not contribute to this ongoing debate because "under either view, where the congressional intent is clear, it governs." *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 854, 110 S.Ct. 1570, 1586, 108 L.Ed.2d 842 (1990). In this case, the plain language of the statute leaves no room for either conjecture or speculation by this court. Because it is precise and unequivocal, "it governs." *Id.*

ly unpopular group.' " *Weinberger v. Salfi,* 422 U.S. 749, 772, 95 S.Ct. 2457, 2470, 45 L.Ed.2d 522 (1975) (quoting *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 534, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973)).

> Particularly when we deal with a withholding of a noncontractual benefit under a social welfare program such as [Social Security], we must recognize that the Due Process Clause can be thought to interpose a bar only if the statute manifests a patently arbitrary classification, utterly lacking in a rational justification.

*Id.* 422 U.S. at 768, 95 S.Ct. at 2468 (quoting *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)).

Under the prior version of the Act, adopted children were treated differently than natural children. Despite the differing treatment, the courts uniformly upheld the Act's constitutionality. *Williams v. Mathews,* 441 F.Supp. 1045, 1047 (E.D.La.1977), *aff'd sub nom Williams v. Califano,* 566 F.2d 1044 *cert. denied,* 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *See also Clayborne v. Califano,* 603 F.2d 372 (2d Cir.1979); *Stanton v. Weinberger,* 502 F.2d 315 (10th Cir. 1974); and *Johnson v. Califano,* 462 F.Supp. 656 (D.Kan.1978). The courts held that Congress' choice to treat differently these two groups of children was rationally related to a legitimate legislative goal, referencing a Senate committee report.

> [T]he committee believes that benefits for a child who is adopted by a worker already getting old-age or disability benefits should be paid only when the child lost a source of support because his parent retired or became disabled, and that the law should include safeguards against abuse through adoption of children solely to qualify them for benefits. . . .

*Williams,* 441 F.Supp. at 1048 (citing S.Rep. No. 92–1230, 92d Cong.2d Sess. 141 (1972) *reprinted in* 1972 U.S.C.C.A.N. 4989, 5039). Thus, the prior version, which clearly treated certain adopted children more harshly than natural, did not violate any constitutional standards.

■ Furthermore, enhanced judicial scrutiny of the statute is not required, even though lines are drawn between adopted and natural children. Adopted children cannot fairly join that rare breed of "suspect classes," without ignoring the fundamental purposes behind that classification. A suspect class is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973). Adopted children simply do not fall in that category. "The status of being adopted has not historically been a focus of discrimination; it causes no enduring social stigma. . . ." *Williams,* 441 F.Supp. at 1049. They are not a "politically unpopular group." *Weinberger,* 422 U.S. at 772, 95 S.Ct. at 2470. As a consequence, legislation in this context need only be rationally related to a legitimate governmental purpose to be in compliance with the Constitution. A compelling justification is simply not necessary.

Plaintiff also argues that, because the Act was amended, a problem must have existed. Otherwise, there would have been no need for the amendment in the first place. The reason behind the amendment to the Act, however, was based on social policy grounds. Congress amended the Act to provide support for children who were not previously eligible for benefits, not because the prior version was unconstitutional. Moreover, "the mere fact that a particular statute is subsequently amended is not tantamount to a finding that it was unconstitutional prior to its amendment. In the absence of proof to the contrary, a statute enjoys a 'strong presumption of constitutionality.' " *Kalchstein ex rel. Kalchstein v. Sullivan,* 758 F.Supp. 836, 839 (E.D.N.Y.1991) (citing *Mathews v. De Castro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976)).

Since the former version of 42 U.S.C. § 402(d)(8)(D) was constitutional even though it distinguished between adopted and natural children, the court concludes that it is not unconstitutional for Congress to eliminate the distinction without making the amendment retroactive. Accordingly, based

on the clear language of the amendment and the constitutionality of the prior version, the court finds substantial evidence to support the Secretary's final decision. That decision must therefore be affirmed. *Laws,* 368 F.2d at 642. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

### *FINAL JUDGMENT AND ORDER*

For reasons stated in a memorandum opinion filed this day, defendant's motion for summary judgment is granted and judgment is hereby entered for the defendant. It is so

### ORDERED

The clerk is directed to send certified copies of this judgment and order to all counsel of record.

ENTER: This 21st day of October 1993.